IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

AUG 25 2008

COURT OF APPEALS
DIVISION TWO



LORENZO SANCHEZ, SR., and ) 
BERTHA SANCHEZ, husband and wife, )
 )          2 CA-CV 2007-0170
Plaintiffs/Appellants, )          DEPARTMENT B
 )
v. )          O P I N I O N
 )
TUCSON ORTHOPAEDIC INSTITUTE, )
P.C., an Arizona corporation, and )
JAMES H. LEVI, M.D., and JANE DOE )
LEVI, husband and wife, )
 )
Defendants/Appellees. )
 )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20062115

Honorable John F. Kelly, Judge

AFFIRMED

Aboud & Aboud, P.C.
 By Michael J. Aboud                                                          Tucson
                                           Attorneys for Plaintiffs/Appellants

Cavett & Fulton, P.C.
 By Dan Cavett                                                               Tucson

    and

Jones, Skelton & Hochuli, P.L.C.
 By Eileen Dennis GilBride                                                  Phoenix
                                          Attorneys for Defendants/Appellees

E C K E R S T R O M, Presiding Judge.

**¶1** Appellants Lorenzo and Bertha Sanchez appeal from the trial court's grant of summary judgment in favor of appellees James Levi, M.D., and Tucson Orthopaedic Institute. The trial court based its ruling on the Sanchezes' failure to comply with the statute governing preliminary expert opinion affidavits in medical malpractice cases, A.R.S. § 12-2603. Contending the statute's requirements cannot be harmonized with the res ipsa loquitur doctrine, the Sanchezes argue, *inter alia*, that the trial court erred when it applied those requirements to their claim and further erred when it concluded that, in any event, they had not sufficiently established the elements of res ipsa loquitur. Because we agree the Sanchezes have not established the elements of res ipsa loquitur as to their claim against Levi and Tucson Orthopaedic, we do not address any conflict between the requirements of § 12-2603 and the res ipsa doctrine, and we affirm the judgment.

**¶2** When reviewing a trial court's grant of summary judgment, we view the facts and all reasonable inferences therefrom in the light most favorable to the opposing party. *Gorney v. Meaney*, 214 Ariz. 226, ¶ 2, 150 P.3d 799, 801 (App. 2007). According to the complaint, Dr. James Levi, an orthopedic surgeon, performed knee surgery on Lorenzo Sanchez on April 28, 2004. Dr. Daniel Hughes, a board-certified anesthesiologist, administered anesthesia. Lorenzo now has severe and permanent nerve damage to his leg. The Sanchezes filed a complaint for medical malpractice against Old Pueblo Anesthesia,

2

P.C., Hughes, Levi, and Tucson Orthopaedic. The Sanchezes alleged that, although they were "not in a position to prove the particular circumstances or conduct which caused [the] damage," it would not have occurred unless Hughes or Levi or both had been negligent.

¶3 Old Pueblo moved to dismiss the complaint because the Sanchezes had failed to certify whether expert opinion testimony was necessary pursuant to § 12-2603(A), and Tucson Orthopaedic joined the motion. The Sanchezes responded by certifying that "the applicability of [res ipsa loquitur] must and will be established by expert testimony." The Sanchezes also avowed they would timely provide a preliminary expert opinion affidavit supporting their claims in compliance with § 12-2603(B). The court denied the motion.

¶4 When the court's pretrial discovery deadline for the disclosure of expert witnesses expired, the Sanchezes had provided the affidavit of an orthopedic surgeon but not an anesthesiologist. After the disclosure deadline had passed, Old Pueblo again moved to dismiss the Sanchezes' complaint, this time for failure to comply with A.R.S. § 12-2604(A), which sets forth the necessary qualifications for expert testimony establishing the standard of care in a medical malpractice case. Old Pueblo argued the affidavit of the orthopedic surgeon the Sanchezes had provided to satisfy § 12-2603(B) was not "qualified and admissible expert testimony against Dr. Hughes," an anesthesiologist. The court granted the motion, thereby dismissing the complaint against Old Pueblo.

¶5 Tucson Orthopaedic subsequently moved for summary judgment on the grounds that the Sanchezes had failed to establish a prima facie case of medical malpractice,

3

that their expert's affidavit failed to meet the requirements of § 12-2603(B), and that res ipsa loquitur was inapplicable. The court granted the motion, agreeing with Tucson Orthopaedic that the affidavit failed to state how Levi had fallen below the standard of care and how that, in turn, would have caused Lorenzo's injury. The court stated that, because it had concluded the Sanchezes had not complied with the statute, it need not decide whether they had proven the elements of res ipsa loquitur, but that "Levi [and Tucson Orthopaedic] would be entitled to summary judgment on this basis as well" because the Sanchezes could not prove the injury was caused by an instrumentality subject to Levi's control.

¶6         After the court dismissed their case against Old Pueblo but before it granted summary judgment in favor of Tucson Orthopaedic, the Sanchezes appealed from the judgment in favor of Old Pueblo. After summary judgment was granted in Tucson Orthopaedic's favor, the Sanchezes separately appealed from that judgment as well. This court declined to consolidate the appeals and subsequently issued an opinion in *Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 183 P.3d 1285 (App. 2008), in which we addressed the dismissal of the complaint against Old Pueblo and Hughes for the Sanchezes' failure to comply with § 12-2604.[1]

¶7         In this appeal, the Sanchezes argue the trial court erred when it granted summary judgment in favor of Tucson Orthopaedic because, in doing so, it "essentially ruled

---

[1]In that appeal, we decided the statutes applied retroactively to the Sanchezes' claims—an issue they have also raised in this appeal. *Sanchez*, 218 Ariz. 317, n.4, 183 P.3d at 1288 n.4.

4

that A.R.S. § 12-2603 trumps the age-old doctrine of *res ipsa*." We review de novo the trial court's decision to grant summary judgment. *Lowe v. Pima County*, 217 Ariz. 642, ¶ 14, 177 P.3d 1214, 1218 (App. 2008). The trial court must grant summary judgment if it finds "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c); *accord Lowrey v. Montgomery Kone, Inc.*, 202 Ariz. 190, ¶ 4, 42 P.3d 621, 623 (App. 2002). And we may affirm a trial court's grant of summary judgment if it is correct for any reason. *See Evenstad v. State*, 178 Ariz. 578, 586, 875 P.2d 811, 819 (App. 1993).

¶8        Here, we need not reach the question whether § 12-2603 effectively abolishes the doctrine of res ipsa loquitur in medical malpractice cases requiring expert testimony because we conclude the Sanchezes have not sufficiently established all the elements of res ipsa loquitur.[2] A plaintiff must establish the following elements to be entitled to invoke that doctrine and reach the jury without direct proof of negligence: (1) the injury must be of a kind that usually does not occur without negligence, (2) the injury must be caused by an instrumentality within the defendant's exclusive control, and (3) the plaintiff must be unable to show the specific circumstances that caused the instrumentality to effect the injury. *Cox v. May Dep't Store Co.*, 183 Ariz. 361, 364, 365-66, 903 P.2d 1119, 1122, 1123-24 (App.

---

[2]For the same reason, we do not address the Sanchezes' argument that the legislature's enactment of § 12-2603 impermissibly infringes on the judiciary's constitutional power to make procedural rules. *See Seisinger v. Siebel*, 532 Ariz. Adv. Rep. 8, ¶ 19 (Ct. App. June 17, 2008) (holding § 12-2604(A), companion legislation to § 12-2603, unconstitutional).

1995). We conclude the Sanchezes have not sufficiently shown that Levi had exclusive control of the instrumentality that injured Lorenzo.

¶9         The exclusive-control element is not to be applied rigidly but "is merely an aid in determining whether it is more probable than not that the [injury] was the result of defendants' negligence." *Byars v. Ariz. Pub. Serv. Co.*, 24 Ariz. App. 420, 426, 539 P.2d 534, 540 (1975); *accord McDonald v. Smitty's Super Valu, Inc.*, 157 Ariz. 316, 321, 757 P.2d 120, 125 (App. 1988). Although plaintiffs are not required to exclude all other possible causes of the injury, they must present facts showing there was a greater probability the injury resulted from the defendant's negligence than from any other cause. *Byars*, 24 Ariz. App. at 426, 539 P.2d at 540; *see Phen v. All Am. Bus Lines*, 56 Ariz. 567, 570, 110 P.2d 227, 228 (1941) ("If, however, there are two concurring causes of the accident, one of which is under the control of a stranger, and there is no evidence it was any more likely that the injury was caused by the negligence of defendant than by that of the stranger, the rule does not apply."); *see also Siebrand v. Gossnell*, 234 F.2d 81, 87 (9th Cir. 1956) (discussing Arizona cases "rest[ing] on the principle" that res ipsa does not apply "when the accident could have happened from various causes, some of which were unrelated to defendant's conduct"); William L. Prosser, *Handbook of the Law of Torts* § 39, at 218 (4th ed. 1971) ("The injury must either be traced to a specific instrumentality or cause for which the defendant was responsible, or it must be shown that he was responsible for all reasonably probable causes to which the accident could be attributed.").

6

¶10      Here, the Sanchezes repeatedly argue that Lorenzo's injury "would not have occurred in the absence of negligence of *either* the anesthesiologist or the orthopedic surgeon." (Emphasis added.) And they provided the affidavit of an orthopedic surgeon, who states, *inter alia*, that he believes the injury to Lorenzo's nerves was caused during the surgery and that "such damage would not occur during this kind of operative procedure unless there was negligence either by the Surgeon or by the Anesthesiologist." He further avows that, if the injury was caused by Levi during the procedure, "that would be below the standard of care." As to Hughes's potential negligence, he opines that Lorenzo's nerves should not have been damaged by a properly administered femoral nerve block, and he notes Lorenzo's medical records suggest that Hughes had administered a popliteal block, which would fall below the standard of care for knee surgery.

¶11      By alleging Hughes was potentially negligent in his administration of anesthesia to Lorenzo and that alone could have caused the injury, the Sanchezes have presented facts suggesting another defendant might have had control of the mechanism of injury. They have failed to present any evidence suggesting that, despite Hughes's potential responsibility, it was more probable than not that Levi, the orthopedic surgeon, nonetheless had simultaneous control of the injury-causing instrumentality. *See McKeever v. Phoenix Jewish Cmty. Ctr.*, 92 Ariz. 121, 124, 374 P.2d 875, 877 (1962) (plaintiff failed to establish defendant had exclusive control of swimming pool where decedent plaintiff drowned); *Stewart v. Crystal Coca-Cola Bottling Co.*, 50 Ariz. 60, 70, 68 P.2d 952, 956 (1937) (res

ipsa did not apply where unexplained cause of accident might not have been defendant's responsibility); *Byars*, 24 Ariz. App. at 426, 539 P.2d at 540 ("On the evidence placed before the trial court, it would have been sheer speculation to conclude that the cause of the accident was one within defendants' exclusive control.").

¶12 Citing *Jackson v. H.H. Robertson Co.*, 118 Ariz. 29, 574 P.2d 822 (1978), the Sanchezes contend our supreme court has authorized application of the res ipsa doctrine even when a claimant is unable to identify which of two parties controlled the instrumentality causing injury. In *Jackson*, the court held that res ipsa could be applied against multiple defendants even though it was "unclear which defendant was in control of the injurious instrumentality at the time of the alleged negligence." *Id.* at 33, 574 P.2d at 826.

¶13 However, we decline to view *Jackson* as a departure from the rule that a claimant must identify, to a degree of probability, which of multiple defendants controlled the instrumentality that injured him. Notably, the court in *Jackson* did not reject, but rather reiterated, the general rule that a claimant must bring "circumstantial evidence supporting the inference that the defendant(s) probably is responsible for the harm to the plaintiff." *Id.* at 32, 574 P.2d at 825. And, since *Jackson*, our appellate courts have repeatedly applied the exclusive-control rule without correction from the supreme court. *See, e.g., Ruiz v. Otis Elevator*, 146 Ariz. 98, 101, 703 P.2d 1247, 1250 (App. 1985) (holding res ipsa applies to two defendants in joint control of instrumentality); *Gaston v. Hunter*, 121 Ariz. 33, 50, 588

8

P.2d 326, 343 (App. 1978) (citing *Jackson* for proposition "it is possible to employ the doctrine against multiple defendants in a proper case," but refusing to apply it to defendant drug companies when insufficient showing of control over injury-causing instrumentality).

¶14 Moreover, the facts in *Jackson* are readily distinguishable from those in this case. There, Jackson could identify the instrumentality that caused his injury, two heavy bundles of construction material falling from a high-rise structure. 118 Ariz. at 31, 574 P.2d at 824. But the Sanchezes did not specify the mechanism of Lorenzo's injury—an evidentiary void that, they concede, prevents them from determining whether it was Levi or Hughes who acted negligently. And, in *Jackson,* the court permitted a res ipsa claim against more than one defendant only because it was "clear that each defendant was in control of the instrumentality at times which reasonably permit the inference that negligence of one *or both* defendants resulted in harm to the plaintiff." *Id.* at 33, 574 P.2d at 826 (emphasis added).

¶15 In short, our supreme court has allowed application of a res ipsa theory against more than one defendant when the claimant presents sufficient evidence from which a jury could find that both defendants controlled the instrumentality that probably caused the injury. *Id.* The Sanchezes make no such contention here. Rather, they maintain that *either* Levi or Hughes controlled the instrumentality causing injury, and they provided no evidence that either defendant probably controlled it.

9

¶16 We acknowledge the challenge a plaintiff may face in attempting to identify the correct defendant in a res ipsa case when more than one party could have been the negligent actor. But, as seen, Arizona's res ipsa doctrine was not designed to relieve litigants of that particular responsibility, and our rules and statutes provide ample opportunity for plaintiffs to conduct discovery to factually develop their cases. *See, e.g.*, Ariz R. Civ. P. 26(a), (b) (entitling claimant to conduct discovery on "any matter, not privileged, which is relevant to the subject matter involved in the pending action," including through depositions, interrogatories, and requests for production of documents); § 12-2603(C) (allowing plaintiff to delay providing expert affidavit in medical malpractice case for "good cause shown"); Ariz. R. Civ. P. 56(f) (trial court may defer ruling on motion for summary judgment "to permit affidavits to be obtained or depositions to be taken or discovery to be had" if "it appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition").[3]

¶17 In sum, it was the Sanchezes' burden to produce enough evidence either to invoke the doctrine of res ipsa loquitur or otherwise make a prima facie case of medical malpractice, and they failed to do so. *See Nieman v. Jacobs*, 87 Ariz. 44, 50, 347 P.2d 702, 706 (1959) (affirming judgment against plaintiffs who had neither established right to invoke res ipsa nor made out prima facie negligence case); *cf. Chiara v. Fry's Food Stores of Ariz.,*

---

[3]During oral argument, the Sanchezes conceded that they had yet to conduct depositions of either Dr. Levi or Dr. Hughes, discovery that could well have assisted them in identifying the instrumentality causing injury and the defendant controlling it.

*Inc.*, 152 Ariz. 398, 401, 733 P.2d 283, 286 (1987) (acknowledging plaintiff has burden of proof in slip-and-fall cases governed by "mode-of-operation" rule, just as in any other negligence case; rule simply alters elements required to prove case). In attempting to rely on the doctrine of res ipsa, the Sanchezes have neither shown Levi had exclusive control of the injury-causing instrumentality nor, by showing vicarious liability or shared control, invoked either of the recognized exceptions to "the logical rule . . . that the plaintiff does not make out a preponderant case against either of two defendants by showing merely that the plaintiff has been injured by the negligence of one or the other." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 39, at 251 (5th ed. 1984). Indeed, the Sanchezes have not argued that Levi is vicariously liable for Hughes's potential negligence nor that Levi and Hughes acted in concert or shared control of the instrumentalities that may have caused Lorenzo's injury. And we can find no legal authority or support in the record for either proposition. *See* A.R.S. § 12-2506(D)(1); *see also Spannaus v. Otolaryngology Clinic*, 242 N.W.2d 594, 597 (Minn. 1976) (finding no joint enterprise between surgeon and anesthesiologist during surgery and recognizing anesthesiologist's autonomy).[4]

---

[4]Nor has either party directed us to the controversial, landmark case of *Ybarra v. Spangard*, 154 P.2d 687 (Cal. 1944). There, the California Supreme Court held that, even without shared control or vicarious liability, when a plaintiff has received "unusual injuries" while unconscious, the doctrine of res ipsa may be invoked against all potentially culpable defendants. *Id.* at 691. That case has been criticized by some courts, *e.g., Hoven v. Rice Mem'l Hosp.*, 396 N.W.2d 569, 572-73 (Minn. 1986), and adopted by others. *See* Joan Teshima, Annotation, *Applicability of Res Ipsa Loquitur in Case of Multiple Medical Defendants—Modern Status*, 67 A.L.R. 4th 544, § 9 (1989 & Supp. 2007) (listing jurisdictions following *Ybarra*). Arizona courts have yet to address the case, and neither

11

¶18 Because the trial court did not err in finding the Sanchezes had failed to establish the elements of res ipsa as to Levi and Tucson Orthopaedic, we affirm the grant of summary judgment in their favor.


_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Judge


_____
GARYE L. VÁSQUEZ, Judge

party has asked us to adopt its reasoning.