NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SHOEMAKE, et al.,
*Plaintiffs/Appellants,*

*v.*

ESTANCIA DE PRESCOTT, LLC,
*Defendant/Appellee.*

SHOEMAKE, et al.,
*Plaintiffs/Appellants,*

*v.*

ESTANCIA DE PRESCOTT, LLC,
an Arizona limited liability company;
DARCY K. HOWARD and REBECCA L. HOWARD, husband and wife;
RONALD L. HUTTER and SHIRLEY R. HUTTER, husband and wife,
*Defendants/Appellees.*

Nos. 1 CA-CV 14-0162, 1 CA-CV 14-0527 (Consolidated)
FILED 2-16-2016

Appeal from the Superior Courts of Yavapai and Maricopa Counties
Nos. P1300CV20081726, P1300CV20081754
(Yavapai County Consolidated)
And CV2010-019374, CV2011-010908
(Maricopa County Consolidated)
The Honorable David L. Mackey, Judge
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED IN PART, REVERSED IN PART, REMANDED**

COUNSEL

Jennings Strouss & Salmon, PLC, Phoenix
By John J. Egbert, David Brnilovich
*Counsel for Plaintiffs/Appellants*

Goodman Law Firm, PC, Prescott
By Mark N. Goodman
*Co-Counsel for Defendants/Appellee*

McFarland & Bostock, PLLC, Sedona
By Elizabeth A. McFarland, Ronald A. Bostock
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

**¶1**        We decide two cases consolidated on appeal. In the first (Shoemake I), fourteen Plaintiff LLCs appeal the Yavapai County Superior Court's grant of summary judgment and jury verdict in favor of Estancia de Prescott, LLC (EDP). In the second (Shoemake II), fourteen Plaintiff LLCs and four Balboa LLCs (collectively Appellants) appeal the Maricopa County Superior Court's grant of summary judgment and award of attorney fees in favor of EDP. For the following reasons, we affirm in part, reverse in part and remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        Larry Shoemake worked as an investment advisor at a bank for fourteen years. In 2004, he left that position and started a home building business in Prescott. After learning that his friend, Ronald Hutter, along with another EDP member, Darcey Howard, were working on the development of a subdivision called Estancia de Prescott, Shoemake approached many former banking clients with an opportunity to invest in subdivided lots for the project.

**¶3**        Ultimately, several investors agreed to purchase several lots in cash. The lots were to be titled to an LLC that Shoemake agreed to

2

manage for the respective investors (Plaintiff LLCs). The investors collectively furnished Shoemake with approximately $2.6 million.

¶4 Shoemake initially purchased eighteen lots from EDP on behalf of the Plaintiff LLCs. Shoemake later reached a separate agreement with EDP whereby he could purchase one lot via carry-back financing for every lot he purchased in cash on behalf of the Plaintiff LLCs. He subsequently purchased fifteen carryback lots from EDP. The carry-back lots ranged in price from $125,000 to $225,000 and Shoemake paid $5,000 down for each lot. EDP financed the remainder of the $2.2 million purchase price at an interest rate of seven percent, per annum.

¶5 Because EDP incurred a substantial tax liability related to the sale of the carry-back lots and debt to a bank, Hutter asked Shoemake to pay off the $2.2 million he owed on the notes for the fifteen carry-back lots. Shoemake could not obtain a bank loan because of "cash-flow issues," so Hutter introduced him to Mike Macera of PHML, LLC (PHML), who expressed an interest in loaning Shoemake funds to pay off the debt to EDP. EDP represented to Macera that loaning Shoemake money would be "a good risk."

¶6 In November 2006, Shoemake executed a number of deeds whereby he conveyed the real property owned by the Plaintiff LLCs into his name. Using these deeds, Shoemake obtained a $3.2 million loan[1] from PHML and secured the loan with the first deed of trust on thirty-one lots in the EDP subdivision. Approximately $2.1 million of the loan was to be used to pay off the fifteen notes EDP held on the carry-back lots. The loan agreement also had a cross-collateralization provision, whereby PHML was permitted to foreclose on all thirty-one lots if one lot was in default.

¶7 Shoemake did not initially inform the Plaintiff LLCs about the PHML loan or the resulting encumbrance on their lots, and he executed deeds re-conveying the lots to the Plaintiff LLCs after the money from the PHML loan was distributed. In August 2008, Shoemake informed several of the Plaintiff LLCs about the $3.2 million PHML loan encumbering their lots, his default on the loan, and PHML's intent to begin a trustee's sales as a result.

---

[1] Shoemake borrowed $103,000 per lot. The loan was calculated to reflect a sixty percent loan to value ratio based on two appraisals of the lots.

¶8          Plaintiff LLCs filed suit against Shoemake, PHML, EDP and others in November 2008 in Yavapai County (Shoemake I), alleging breach of fiduciary duty, conversion/corporate looting, civil conspiracy, lender inducement to breach a fiduciary duty, negligent misrepresentation, fraud, fraudulent concealment, fraudulent transfers and forgery. They alleged, in part, that Shoemake "converted the equity from the real estate" Plaintiff LLCs' owned without their authorization and EDP aided and abetted Shoemake in the "looting and conversion" of the equity. Plaintiff LLCs sought a judgment quieting title to their respective lots and a preliminary injunction enjoining First American Title Insurance Company (First American)[2] from proceeding with the trustee's sales. Four additional investor LLCs (Balboa LLCs) brought suit against PHML in a separate proceeding in Yavapai County. The Plaintiff LLCs and Balboa LLCs later both stipulated to dismissing their respective claims against PHML.

¶9          After Plaintiff LLCs and PHML settled their disputes, they "joined efforts against [EDP]." As part of the settlement, PHML released Plaintiff LLCs' lots from PHML's deed of trust. A month later, Plaintiff LLCs moved to amend their original complaint. The Proposed First Amended Complaint named Howard and Hutter, among others, as defendants and raised additional claims against EDP. The trial court denied the motion, finding that the delay in asserting the proposed claims would unduly prejudice EDP and that adding additional defendants would unduly delay the proceedings.

¶10          In August 2010, the Shoemake I Plaintiff LLCs and the Balboa LLCs filed suit against Shoemake, EDP, Howard, Hutter, and others in Maricopa County (Shoemake II). The Shoemake II Plaintiffs also included PHML. The Balboa LLCs alleged breach of a fiduciary duty, conversion and corporate looting, negligent misrepresentation, fraud, fraudulent concealment, and fraudulent transfers. PHML pled breach of contract, restitution, breach of guarantee, and aiding and abetting. The Plaintiff LLCs and Balboa LLCs alleged conversion/corporate looting, civil conspiracy, lender inducement to breach a fiduciary duty, fraudulent transfers, restitution, subrogation, constructive trust, professional negligence and breach of a fiduciary duty.[3]

---

[2]          The Plaintiff LLCs ultimately dismissed their claims against First American without prejudice.

[3]          Shoemake was served, but never appeared or defended and subsequently filed bankruptcy and obtained a discharge.

¶11            The Shoemake II Plaintiffs subsequently filed a motion with the Yavapai court to consolidate the matters pending before the Yavapai and Maricopa courts.  However, the Yavapai court denied the motion.

¶12            The court in Shoemake I granted EDP's Motion for Partial Summary Judgment on the conversion and related claims, holding "the alleged loss of intangible equity in real estate cannot be recovered through a claim of conversion."  The court also granted EDP's Motion for Partial Summary Judgment on Plaintiff LLCs' fraudulent transfer claims.

¶13            The Shoemake I Plaintiff LLCs' remaining claims proceeded to trial.  During the trial, Shoemake admitted that he never told EDP that he lied to Plaintiff LLCs and further admitted that he had not conspired with EDP.

¶14            Over Plaintiff LLCs' objection, the trial court provided the following jury instruction regarding their aiding and abetting claim:

> Plaintiffs claim that Defendant [EDP] aided and abetted Larry Shoemake and that [EDP] is therefore liable for the consequences of Larry Shoemake's conduct. [EDP] denies the Plaintiffs' claim.  On this claim, Plaintiffs must prove by a preponderance of the evidence:
>
> 1. Larry Shoemake engaged in conduct for which he is liable to the Plaintiffs;
>
> 2. [EDP] was aware that Larry Shoemake was going to engage in such conduct;
>
> 3. [EDP] provided substantial assistance or encouragement to Larry Shoemake with the intent of promoting the conduct;
>
> 4. There was a causal connection between [EDP's] assistance or encouragement and Larry Shoemake's conduct;
>
> 5. Plaintiffs were damaged by the conduct [EDP's] aiding and abetting helped produce; and
>
> 6. Each Plaintiff's own damages.
>
> 7. Knowledge of Larry Shoemake's purpose is not sufficient for aiding and abetting; [EDP] must also have shared that

purpose or intended to commit, encourage, or facilitate the commission of the allegedly wrong conduct.

The jury returned a verdict in favor of EDP on all remaining claims.

¶15 EDP then filed a Motion for Partial Summary Judgment Re: Res Judicata against the Shoemake II Appellants in the Maricopa County action. The court granted the motion, finding the Plaintiff LLCs and EDP "were parties in all the civil actions, and the subject matter is identical and the causes of action are based on the same evidence." The court also awarded EDP $300,000 in attorney fees and $17,213.73 in taxable costs.

¶16 The Plaintiff LLCs and Balboa LLCs timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12-120.21.A.1 and -2101.A.1 (West 2015).[4]

**DISCUSSION**

I. Shoemake I

    A. Summary Judgment

¶17 We review the grant of summary judgment de novo. *Aranki v. RKP Invs., Inc.*, 194 Ariz. 206, 208, ¶ 6 (App. 1999). We view the evidence in the light most favorable to the parties against whom summary judgment was granted. *Weitz Co. L.L.C. v. Heth*, 235 Ariz. 405, 408, ¶ 2 (2014).

        1. Conversion

¶18 Plaintiff LLCs argue the trial court erred by granting summary judgment in favor of EDP on their conversion claim. Their original complaint alleged Shoemake "looted" their equity and "converted the equity from the real estate owned by the Plaintiff LLCs into cash by way of the . . . $3,200,000 Note and Deed of Trust with PHML[.]" They further asserted EDP aided and abetted Shoemake in the looting and conversion of Plaintiff LLCs' equity. "[W]e may affirm a trial court's grant of summary judgment if it is correct for any reason." *Sanchez v. Tucson Orthopaedic Inst., P.C.*, 220 Ariz. 37, 39, ¶ 7 (App. 2008).

---

4 We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

¶19 In Arizona, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 209 Ariz. 462, 472, ¶ 34 (App. 2005) (quoting Restatement (Second) of Torts § 222A(1)(1965)). Chattel is "[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property." Black's Law Dictionary 268 (9th ed. 2009).

¶20 When Shoemake transferred title to his name and pledged the Plaintiff LLCs' lots as security for the $3.2 million PHML loan, thereby converting their equity, the Plaintiff LLCs ceased to have any ownership interest in the lots or "right to control" them. Thus, Plaintiff LLCs did not have a cognizable conversion claim against Shoemake. Nor did the Plaintiff LLCs have an aiding and abetting conversion claim or a conspiracy conversion claim against EDP as to the loan proceeds. *See United Bonding Ins. Co., v. Swartz*, 12 Ariz. App. 197, 199 (App. 1970) ("The plaintiff must plead and prove ownership or the right to possess of the property *at the time of the alleged conversion*.") (Emphasis added). We therefore affirm the trial court's grant of partial summary judgment on the conversion claims.

2. Fraudulent Transfer

¶21 Plaintiff LLCs argue the trial court erred by granting summary judgment in favor of EDP because sufficient evidence supported their fraudulent transfer claim. "We will affirm if the trial court's disposition is correct for any reason." *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996).

¶22 Under A.R.S. § 44-1004.A.1:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claims arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor.

However, a transfer is not voidable under this subsection against "a person who took in good faith and or reasonably equivalent value or against any

7

subsequent transferee or obligee." A.R.S. § 44-1008.A.[5] "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied[.]" A.R.S. § 44-1003.A.

**¶23** In the Motion for Partial Summary Judgment #3: Fraudulent Transfer Claims, EDP asserted the carry-back notes and deeds of trust on the fifteen lots were an antecedent debt and that the sum it received from the $3.2 million PHML loan provided "reasonably equivalent value" in exchange for satisfaction of Shoemake's debt to EDP. Plaintiff LLCs did not dispute the assertion in their response and cross motion for summary judgment, but instead asserted, "[e]ven if EDP attempted to claim it was a good faith transferee, that attempt fails because it knew of Shoemake's insolvency and EDP actively participated in the scheme." The problem is that Plaintiff LLCs never proffered any admissible evidence that EDP actively participated in the scheme to fraudulently transfer the properties from Plaintiff LLCs to Shoemake, in order to get the loan from PHML, such as to create a genuine issue of fact.[6]

**¶24** On appeal, Plaintiff LLCs allege they presented evidence that Shoemake was a debtor and the Plaintiff LLCs were creditors within the realm of A.R.S. § 44-1004.A.1. They further claim "there are substantial facts that demonstrate that Shoemake's loan transaction with PHML, pursuant to which he transferred over $2 million of proceeds from the Plaintiff-LLCs' property for the benefit of 'EDP' constitutes a 'transfer' under the statutory definition."

**¶25** Assuming, arguendo, that Plaintiff LLCs' claims are true, their fraudulent transfer claim could only be asserted against Shoemake, not EDP. They did not demonstrate they had a creditor-debtor relationship with EDP or that EDP received anything other than payment for Shoemake's preexisting debt. Moreover, their complaint in Shoemake I did

---

[5] Plaintiff LLCs argue that the issue of whether EDP took in good faith for reasonably equivalent value was a jury question and should not have been decided by summary judgment. Because they did not raise this argument before the trial court, we will not address it on appeal. *See Schoenfelder v. Ariz. Bank*, 165 Ariz. 79, 88 (1990).

[6] In fact, at trial Shoemake admitted that he never told EDP that he lied to Plaintiff LLCs and had not conspired with EDP.

not allege that EDP was involved in the purported fraudulent transfer. Instead, the complaint alleged:

> The transfers of the Plaintiffs' real estate from the Plaintiff LLCs to [Shoemake] were void and [Shoemake's] encumbrance of Plaintiffs' real estate to [PHML] on November 30, 2006 constituted fraudulent transfer in violation of A.R.S. § 44-1001. . . . Among the remedies set forth in A.R.S. § 44-1007, Plaintiffs are entitled to an injunction against further disposition of the real estate by [Shoemake] or [PHML].

Because Plaintiff LLCs, as a matter of law, did not establish a fraudulent transfer claim against EDP or raise genuine issues of material fact as to this claim, we affirm the grant of partial summary judgment.

### B.      Jury Instruction

¶26      Plaintiff LLCs argue the aiding and abetting jury instruction the trial court gave over their objection was erroneous and prejudicial, resulting in reversible error. We review the jury instruction for an abuse of discretion. *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 533, ¶ 50 (App. 2009). However, "we review whether a jury instruction correctly states the law de novo." *Id.* In so deciding, we review jury instructions in their totality. *Id.*

¶27      Plaintiff LLCs contend the trial court erred by issuing a jury instruction requiring them to show that EDP "shared [Shoemake's] purpose or intended to commit, encourage, or facilitate the commission of the allegedly wrongful conduct" to prevail on their aiding and abetting claim. They argue the instruction imposed "an additional requirement or essential element of their aiding and abetting claim which the law does not recognize." We agree that a plaintiff is not required to prove that the tortfeasor and defendant had a shared motive to prevail on a civil aiding and abetting claim.

¶28      Arizona recognizes an aiding and abetting claim as embodied in the Restatement (Second) of Torts, *Federico v. Maric*, 224 Ariz. 34, 36, ¶ 8 (App. 2010), which provides: "[f]or harm resulting to a third person for the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]" Restatement (Second) of Torts § 876(b). *See also Dawson v. Withycombe*, 216 Ariz. 84, 102, ¶ 50 (App. 2007); *Wells Fargo Bank v. Ariz. Laborers, Teamsters*

*and Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 485, ¶ 34 (2002).

**¶29** While objecting to the aiding and abetting jury instruction the trial court ultimately proffered, Plaintiff LLCs argued "[t]he knowledge requirement may be satisfied by showing general awareness of the primary tortfeasor's scheme . . . . [T]here is nothing there that even comes close to the concept of [a required] shared purpose."

**¶30** EDP argues the instruction was proper because the "shared purpose" requirement is consistent with the Restatement (Second) of Torts § 876(a), which ascribes liability to a third party who "does a tortious act in concert with the other or pursuant to a common design with him[.]" However, subsection (a) delineates the elements of a claim for damages caused by a civil conspiracy, not a claim for aiding and abetting. *See Estate of Hernandez by Hernandez-Wheeler v. Flavio*, 187 Ariz. 506, 510-11 (1997); Restatement (Second) of Torts § 876 cmt. b ("It is in connection with these common designs or plans that the word 'conspiracy' is often used."); *Dube v. Likins*, 216 Ariz. 406, 413, ¶ 15 (App. 2007) (differentiating aiding and abetting claims from civil conspiracy claims). Moreover, EDP conceded in its Revised Proposed Jury Instructions that "no valid claim against [EDP] for civil conspiracy is pending and therefore no instruction is appropriate."

**¶31** However, EDP contends there was no error because "[t]he 'shared purpose' was not required under this jury instruction; it was an alternative basis for the intent requirement." In *Musgrave*, the court examined a jury instruction providing, "if you find that this negligence was a proximate *or* concurrent cause of the accident and plaintiff's injuries, then your verdict must be for the defendants." *Musgrave v. Githens*, 80 Ariz. 188, 190 (1956) (emphasis added). The court concluded the instruction erroneously misstated the law because "the terms 'proximate' and 'concurrent' are in no sense synonymous, and a concurrent cause is not necessarily a proximate cause." *Id.* at 192.

**¶32** As in *Musgrave*, a "shared purpose" simply is not synonymous with an "intent to commit, encourage, or facilitate the commission of the allegedly wrong conduct." The first is related to civil conspiracy and the latter is an aiding and abetting claim element. Thus, the trial court erred by giving the aiding and abetting instruction over a proper objection.

¶33 The error, however, does not require a new trial. The jury's verdict necessarily means EDP neither shared a purpose with Shoemake nor intended to commit, encourage or facilitate his conduct.

> Knowledge of Larry Shoemake's purpose is not sufficient for aiding and abetting; [EDP] must also have shared that purpose *or* intended to commit, encourage, or facilitate the commission of the allegedly wrong conduct.

(Emphasis added.) *See Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 583, ¶ 21 (App. 2003) (presuming juries follow jury instructions). Thus, even if the court had omitted the "shared purpose" language from the instruction, the result would have been the same because the jury neither found a "shared purpose" nor an "intent to commit, encourage, or facilitate the commission of the allegedly wrong conduct." *See Haines v. S. Pac. Co.*, 7 Ariz. App. 65, 72 (App. 1968) ("[I]f any error in the instructions on contributory negligence, as to a single or double standard as argued by the plaintiff, existed it could only be harmless error in light of the jury's verdict for the defendant."). Thus, the error in giving the improper aiding and abetting instruction was harmless, and we affirm the jury's verdict on the aiding and abetting claim.

## C. Leave to Amend

¶34 Plaintiff LLCs next contend the trial court abused its discretion by denying them leave to amend their original complaint. "We review a trial court's denial of a motion to amend a complaint for an abuse of discretion." *Tumacacori Mission Land Dev. Ltd. v. Union Pac. R.R. Co.*, 231 Ariz. 517, 519, ¶ 4 (App. 2013). "Leave to amend shall be freely given when justice requires." Ariz. R. Civ. P. 15(a)1.B. Granting leave to amend is within the trial court's discretion, but should be granted liberally. *MacCollum v. Perkinson*, 185 Ariz. 179, 185 (App. 1996). "Amendments will be permitted unless the court finds undue delay in the request, bad faith, undue prejudice, or futility in the amendment." *Id.*

¶35 Plaintiff LLCs argue there was no undue delay because they requested leave to amend less than a year after filing their complaint and after the initial trial date was vacated. Mere delay does not justify the denial of leave to amend, but "substantial prejudice to the opposing party is a critical factor used in determining whether an amendment should be granted." *Schoolhouse Educ. Aids, Inc. v. Haag*, 145 Ariz. 87, 91 (App. 1985).

¶36 The proposed amended complaint sought to add four defendants and additional claims against EDP. The court concluded that

11

permitting the amendment would prejudice EDP and that "there is no doubt that combining those claims into this action will substantially delay this case for no less than two years beyond the delay that has already resulted." The ruling stated that the proposed amendment would substantially delay the trial, which is prejudice. *Carranza v. Madrigal*, 237 Ariz. 512, 515, ¶ 13 (2015) ("Prejudice is the inconvenience and delay suffered when the amendment raises new issues or inserts new parties into the litigation.") (punctuation and citation omitted). Even if we might have ruled differently on the motion to amend,

> [t]he question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason. We cannot substitute our discretion for that of the trial judge.

*Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 571 (1985). Applying these standards, we find no abuse of the trial court's considerable discretion.

### D.      Attorney Fees and Sanctions

¶37      EDP requests its attorney fees on appeal pursuant to A.R.S. § 12-341.01.A, -341.01.C, and -349. Under A.R.S. § 12-341.01.A, the court may award a successful party reasonable attorney fees in actions arising out of a contract.

¶38      Plaintiff LLCs never alleged they entered into a contract with EDP. Moreover, their complaint in Shoemake I did not allege any contract related claims. EDP acknowledges as much by asserting it "had no contractual . . . relationship with any [Plaintiff LLC]" in its answering brief.

¶39      Because Plaintiff LLCs' claims against EDP arose in tort and not contract law, EDP is not entitled to attorney fees under § 12-341.01. *See Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 201 (App. 1994) ("[W]hen the duty alleged to be breached arises whether or not the contract exists, the action arises in tort and the successful party may not claim fees under A.R.S. § 12-341.01.").

¶40      Similarly, EDP is not entitled to an award of attorney fees under A.R.S. § 12-349. Section 12-349.A.1 provides that:

> [I]n any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages

of not to exceed five thousand dollars against an attorney or party, including this state and political subdivisions of this state, if the attorney or party . . . [b]rings or defends a claim without substantial justification.

**¶41** To be entitled to fees under this provision, EDP is required to show by a preponderance of the evidence that Plaintiff LLCs' claims are "groundless and . . . not made in good faith." A.R.S. § 12-349.F; *see also In re Estate of Stephenson*, 217 Ariz. 284, 289, ¶ 28 (App. 2007). Although EDP prevailed on appeal in Shoemake I, EDP did not show the claims were groundless or not made in good faith. Thus, we deny its request for fees. However, EDP is entitled to its taxable costs incurred for the Shoemake I appeal contingent on its compliance with ARCAP 21.

II. Shoemake II

A. Claim Preclusion[7]

**¶42** Appellants argue "[t]he trial court erred in granting summary judgment based on claim preclusion because this litigation is not 'based on the same claim' decided in [Shoemake I]."[8] We review the grant of summary judgment de novo. *Hourani v. Benson Hosp.*, 211 Ariz. 427, 432, ¶ 13 (App. 2005). "Whether a claim is precluded as [claim preclusion] is a question of law, which we review de novo." *Hall v. Lalli*, 191 Ariz. 104, 106 (App. 1997).

**¶43** To establish the defense of claim preclusion, "a party must prove: (1) an identity of claims in the suit in which a judgment was entered and the current litigation, (2) a final judgment on the merits in the previous litigation, and (3) identity or privity between the parties in the two suits." *Peterson v. Newton*, 232 Ariz. 593, 595, ¶ 5 (App. 2013) (citation and punctuation omitted). "If no additional evidence is needed to prevail in the

---

[7] The parties' briefs refer to res judicata and claim preclusion interchangeably. For consistency, we refer only to claim preclusion throughout.

[8] Appellants also argue "[t]o the extent the [Shoemake I] judgment is reversed . . . the summary judgment in [Shoemake II] must be reversed." Because we affirmed the Shoemake I judgment and jury verdict, we do not address this issue.

second action than that needed in the first, then the second action is barred." *Phoenix Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 240 (App. 1997).

### 1. Balboa LLCs' claims

**¶44** Citing the Restatement (Second) of Judgments § 26(1)(a), Appellants argue claim preclusion does not apply when "the defendant has acquiesced to splitting a claim between two actions." Under the Restatement:

> (1) When any of the following circumstances exist, the general rule [against splitting claims] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

> (a) The parties have agreed in terms or in effect the plaintiff may split the claim, or the defendant has acquiesced therein[.]

**¶45** In November 2008, the Balboa LLCs brought suit against PHML in Yavapai County. The parties agreed to consolidate the matter with Shoemake I for purposes of discovery only. Plaintiff LLCs later moved to join the Balboa LLCs or, alternatively, to consolidate Shoemake I with the Balboa LLCs' proceeding. EDP opposed the motion, arguing "[j]oinder [of Balboa LLCs] is not proper unless the transaction or occurrence was the *same*, not just *similar*. . . . The Balboa 'transactions are perhaps similar but they are not the same.'" EDP's response proffered several reasons why the Balboa LLCs were distinct from the Plaintiff LLCs and concluded:

> Allowing consolidation of the Balboa LLCs as Plaintiffs will create the need for factual discovery by EDP which would not otherwise have been necessitated nor expected . . . . Allowing consolidation of the Balboa LLCs as plaintiffs raises new issues. EDP will now have to investigate Mr. Balboa. EDP will now have to investigate the unique circumstances relating to the Balboa transactions.

**¶46** EDP now asserts Balboa LLCs' claims in Shoemake II were based on the same claims that were asserted in Shoemake I. Moreover, EDP asserts that "no additional evidence is necessary to include the Balboa LLCs [in the Shoemake I proceedings]."

14

¶47 EDP cannot fairly assert that the Balboa LLCs' claims are distinct from those of the Plaintiff LLCs in order to prevent consolidation before the court in Shoemake I and then argue that the claims are identical to support its claim preclusion defense in Shoemake II. This type of inequitable result is contemplated by § 26(1)(a) of the Restatement. Comment a provides: "[a] main purpose of the general rule [against splitting claims] is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim." EDP's argument in Shoemake I that the Balboa LLCs' claims were distinct from Plaintiff LLCs' claims is the functional equivalent of consent to splitting the Balboa LLCs' claims from the Shoemake I proceedings.

¶48 Even if EDP could satisfy the first two requirements of a successful claim preclusion defense, it cannot establish identity or privity between the Balboa LLCs and the Plaintiff LLCs. "Finding privity between a party and non-party requires both a substantial identity of interests and a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation." *Hall*, 194 Ariz. at 57, ¶ 8 (citation and punctuation omitted).

¶49 There is no dispute that the Balboa LLCs were not parties in Shoemake I. Moreover, EDP acknowledged a lack of privity before the Shoemake I trial court by arguing:

> [Plaintiff LLCs'] pleadings demonstrate that Balboa lives in California, while the other 'investors' live in Arizona. Larry Shoemake made a special trip to California to talk to Balboa. Obviously the fraud Shoemake committed while talking to Balboa in California was not the same fraud he committed while talking to people in Phoenix.

> The Balboa real estate transaction did not arise out of the same transaction or occurrence as the real estate transactions for the [Plaintiff LLCs].

Thus, we reverse the ruling in Shoemake II that the Balboa LLCs' claims were precluded by the rulings and verdicts in Shoemake I and remand to the Maricopa County Superior Court for further proceedings.

15

### 2. Plaintiff LLCs' claims

**¶50** EDP argues "[w]hen a trial court has entered a final judgment resolving a party's cause of action, that party is barred from bringing another lawsuit 'based on the same claim' it has litigated even though some of those theories in the second lawsuit were not raised in the first lawsuit." With respect to Plaintiff LLCs' Shoemake II claims, EDP argues "the same evidence test is met because the Plaintiff LLCs planned to use literally the same evidence in the [Shoemake II] case they had used in the [Shoemake I] trial."

**¶51** We agree that several claims Plaintiff LLCs raised in Shoemake II are barred by the result of Shoemake I. For example, the claim for conversion/corporate looting against EDP in Shoemake I (Count two) was resolved in EDP's favor and Plaintiff LLCs are barred from raising it against Hutter and Howard in Shoemake II (Count three) because they are in privity with EDP by virtue of being its principals. *See Hall*, 194 Ariz. at 57, ¶ 8. The same analysis applies to the civil conspiracy claim alleged against Hutter and Howard in Shoemake II (Count five) because it was resolved in EDP's favor in Shoemake I (Count three).

**¶52** However, in Shoemake II, Plaintiff LLCs alleged several claims against Howard and Hutter not previously litigated against EDP in Shoemake I, including lender inducement to breach a fiduciary duty (Count seven) and restitution, subrogation, and constructive trust (Count thirteen). Moreover, they alleged professional negligence and breach of a fiduciary duty against Peter C. Guild and the Cavanagh Law Firm (Count seventeen), non-parties in Shoemake I. These claims, which are substantively distinct and have different elements than those pled in Shoemake I, would necessarily require evidence not presented in the Shoemake I proceedings to prevail. Because there was no final judgment on the merits of these claims in Shoemake I, the ruling in Shoemake II that these claims were precluded, was error. *See Peterson*, 232 Ariz. at 595, ¶ 5. Thus, we reverse the Maricopa County Superior Court's ruling with respect to these claims and remand for further proceedings.

### B. Attorney Fees Award

**¶53** Plaintiff LLCs argue the trial court in Shoemake II abused its discretion by awarding EDP attorney fees. We review the award of attorney fees for an abuse of discretion. *Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 205, ¶ 5 (App. 2014). "However, we review questions of law, including the court's authority to award attorney fees . . . de novo." *Id.*

¶54         EDP requested attorney fees and costs pursuant to A.R.S. §§ 12-311, -332, -340, -341.01, -349, and -350 and Arizona Rule of Civil Procedure 11(a).   The court awarded $300,000 in attorney fees and $17,213.73 in taxable costs to EDP.  The court's order provided, "for the reasons set forth in [EDP's] Application for Award of Attorneys' Fees and Taxable Costs and the reply in support thereof, the Court finding there is no just reason for delay in entry of a final judgment . . . and that judgment should be directed[.]"

¶55         Because the only statutes EDP cited in its application for fees are A.R.S. §§ 12-341.01.C and -349, we review the proper procedures for awarding fees under those statutes.  Just as in Shoemake I, the Plaintiff and Balboa LLCs did not raise any contract related claims in Shoemake II.[9]  For reasons already set forth, the award for attorney fees insofar as it was pursuant to A.R.S. § 12-341.01.C, was improper.  *See supra* ¶¶ 41-42.

¶56         Under A.R.S. § 12-349.A, a court shall assess reasonable attorney fees and expenses against an attorney or party who: 1) "[b]rings or defends a claim without substantial justification[;]" 2) "[b]rings or defends a claim solely or primarily for delay or harassment[;]" 3) "[u]nreasonably expands or delays the proceedings[;]" or 4) "[e]ngages in abuse of discovery."

¶57         To award attorney fees under A.R.S § 12-349, "the trial court must make appropriate findings of fact and conclusions of law."  *Fisher ex rel. Fisher v. Nat'l Gen. Ins. Co.*, 192 Ariz. 366, 369-70, ¶ 13 (App. 1998); *see also* A.R.S. § 12-350 (requiring the court to "set forth the specific reasons for the award" under A.R.S. § 12-349 and listing eight factors the court may include in its consideration).

¶58         "Proper specific findings of fact and conclusions of law that demonstrate the application of the statute's language greatly assist an appellate court on review."  *State v. Richey*, 160 Ariz. 564, 565 (1989).  However, to the extent the trial court in Shoemake II awarded fees under section 12-349, it did not make the required findings of fact and conclusions of law.  Furthermore, nothing in the record establishes that Plaintiff LLCs and Balboa LLCs engaged in abusive discovery tactics or brought their claims in Shoemake II without substantial justification, to harass EDP, or to unreasonably expand or delay proceedings.  Because we have reversed the grant of claim preclusion, EDP has not prevailed on appeal.  We therefore

---

[9]         PHML asserted a breach of contract claim against EDP, Hutter, and Howard, but is not a party to this appeal.

vacate the award of attorney fees and costs in Shoemake II, and remand for further proceedings consistent with this decision.

## CONCLUSION

**¶59**        For the foregoing reasons, the Shoemake I trial court's grant of summary judgment and the jury's verdicts are affirmed.  The Shoemake II court is affirmed in part and reversed in part, and we remand to the Maricopa County Superior Court for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
FILED: ama