IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| LORENZO SANCHEZ, SR., and BERTHA SANCHEZ, husband and wife, | ) ) ) | |
| Plaintiffs/Appellants, | ) ) | 2 CA-CV 2007-0131 DEPARTMENT B |
| v. | ) ) | O P I N I O N |
| OLD PUEBLO ANESTHESIA, P.C., an Arizona corporation, and DANIEL F. HUGHES, M.D., and BARBARA HUGHES, husband and wife, | ) ) ) ) ) | |
| Defendants/Appellees. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20062115

Honorable John F. Kelly, Judge

AFFIRMED IN PART
REVERSED IN PART AND REMANDED

Aboud & Aboud, P.C.
  By Michael J. Aboud                                                              Tucson
                                              Attorneys for Plaintiffs/Appellants

Smith Law Group
  By Christopher J. Smith and E. Hardy Smith                         Tucson
                                              Attorneys for Defendants/Appellees

E C K E R S T R O M, Presiding Judge.

¶1 Appellants Lorenzo and Bertha Sanchez appeal from the trial court's dismissal of their complaint against Daniel Hughes, M.D., and Old Pueblo Anesthesia, P.C., for the Sanchezes' failure to obtain a preliminary expert opinion affidavit from an anesthesiologist to support their claim. They argue that, because their claim is based on res ipsa loquitur, the relevant statutes, A.R.S. §§ 12-2603 and 12-2604, do not require them to engage an expert in the specialty of each physician they allege may have been negligent. The Sanchezes also argue the trial court should have given them leave to obtain the affidavit of an anesthesiology expert, rather than dismissing their complaint. Although we agree with the court that plaintiffs must comply with the requirements of § 12-2604 even when relying on the doctrine of res ipsa loquitur, we disagree that a dismissal with prejudice was the appropriate remedy for the plaintiff's failure to abide by that statute.[1] Accordingly, we reverse and remand the case to the trial court.

¶2 When reviewing the trial court's grant of a motion to dismiss, we accept the facts alleged in the complaint as true, and we view those facts in the light most favorable to the complainant, here the Sanchezes. *See Johnson v. McDonald*, 197 Ariz. 155, ¶ 2, 3 P.3d 1075, 1077 (App. 1999). According to the complaint, Dr. James Levi, an orthopedic surgeon, performed knee surgery on Lorenzo Sanchez on April 28, 2004. Hughes, a board-

---

[1]Old Pueblo moved for dismissal with prejudice, and the court granted the motion without specifying whether the dismissal was with or without prejudice. We therefore presume it was with prejudice. *See* Ariz. R. Civ. P. 41(b) (unless court specifies, dismissal is "adjudication upon the merits"); *Torres v. Kennecott Copper Corp.*, 15 Ariz. App. 272, 274, 488 P.2d 477, 479 (1971) (dismissal with prejudice is judgment on merits).

certified anesthesiologist, administered anesthesia. Lorenzo now has severe and permanent nerve damage to his leg.

¶3            The Sanchezes filed a complaint against Old Pueblo, Hughes, Levi, and Tucson Orthopaedic Institute for medical malpractice. The complaint alleged that, although the Sanchezes were "not in a position to prove the particular circumstances or conduct which caused [the] damage," the nerve damage to Lorenzo's leg would not have occurred unless Hughes, Levi, or both had been negligent. Old Pueblo moved to dismiss the complaint on the ground that the Sanchezes had failed to certify whether expert opinion testimony was necessary pursuant to § 12-2603(A). The Sanchezes responded by submitting an affidavit, certifying that the "applicability of [res ipsa loquitur] must and will be established by expert testimony." The Sanchezes also avowed they would timely provide a preliminary expert opinion affidavit confirming their claims pursuant to § 12-2603(B). The court denied Old Pueblo's motion to dismiss at that time.

¶4            Before the court's pretrial discovery deadline for the disclosure of expert witnesses expired,[2] the Sanchezes had provided the affidavit of an orthopedic surgeon but not an anesthesiologist. After the disclosure deadline had expired, Old Pueblo again moved to dismiss the Sanchezes' complaint for failure to comply with § 12-2604(A), which sets forth the necessary qualifications for expert testimony establishing the standard of care in a medical malpractice case. Old Pueblo argued the orthopedic surgeon's affidavit the

_____

[2]We presume the Sanchezes provided the affidavit in a timely fashion, although it appears in the record on appeal only as an attachment to Old Pueblo's motion to dismiss.

3

Sanchezes had provided was not "qualified and admissible expert testimony against Dr. Hughes," an anesthesiologist. The court granted the motion, thereby dismissing the complaint against Old Pueblo,[3] and this appeal followed.

¶5        The Sanchezes argue the trial court erred when it determined §§ 12-2603 and 12-2604 required them to provide expert testimony from both an anesthesiologist and an orthopedic surgeon to establish their claim based on the doctrine of res ipsa loquitur. We review de novo the trial court's interpretation and application of statutes. *Energy Squared, Inc. v. Ariz. Dep't of Revenue*, 203 Ariz. 507, ¶ 15, 56 P.3d 686, 688 (App. 2002).

¶6        Under § 12-2603(A), a plaintiff who asserts a claim against a health care professional in a civil action must certify "whether or not expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim." If the claimant certifies such expert testimony is necessary, "the claimant shall serve a preliminary expert opinion affidavit with the initial disclosures that are required by rule 26.1, Ariz[. R. Civ. P]." § 12-2603(B). In doing so, the claimant "may provide affidavits from as many experts as the claimant . . . deems necessary." *Id.* An affidavit must contain, at a minimum, four elements: the expert's qualifications for providing an opinion on the standard of care, the factual basis of the claim, the acts that violated the standard of care, and the manner in which those acts harmed the claimant. *Id.* The companion statute, § 12-2604(A), sets forth the minimum qualifications for an expert to provide testimony on the appropriate

---

[3]Tucson Orthopaedic moved for summary judgment on different grounds that are not the subject of this appeal. The trial court granted the motion, and the Sanchezes have also separately appealed that ruling.

standard of care: the expert witness must be "licensed as a health professional" and must specialize in the same specialty "as the party against whom . . . the testimony is offered."

¶7        In an attempt to comply with the statutes, the Sanchezes submitted the preliminary expert opinion affidavit of an orthopedic surgeon. In it, the surgeon stated, *inter alia*, that he believed the injury to Lorenzo's nerves was caused during the surgery and that "such damage would not occur during this kind of operative procedure unless there was negligence either by the Surgeon or by the Anesthesiologist." He noted a possible indication in Lorenzo's medical records that the anesthesiologist, Hughes, had administered a popliteal block and opined that the use of such a block would fall below the standard of care for knee surgery. Finally, he concluded that, even if there had been a "legitimate reason" for using a popliteal block, it "should not have resulted in [nerve] damage."

¶8        In dismissing the Sanchezes' complaint against Old Pueblo, the court concluded that they had

> failed to comply with the requirements of A.R.S. § 12-2604 as it applies to Dr. Hughes, a board certified anesthesiologist. [They] attempt[] to show that Dr. Hughes violated the standard of care through the testimony of a board certified orthopedic surgeon. In order to make this claim, the statute requires [the Sanchezes] to produce the expert testimony of a board certified anesthesiologist. [They] may not rely on the theory [of] *res ipsa loquitur* in order to avoid the requirements of the statute in this case.

¶9        The Sanchezes maintain the trial court erred in so concluding because §§ 12-2603 and 12-2604 only apply to "usual" medical malpractice cases and not those involving

5

the doctrine of res ipsa loquitur.[4] But the terms of those statutes apply globally to "claim[s] against a health care professional . . . asserted in a civil action" and contain no exception for cases asserting the theory of res ipsa loquitur. § 12-2603(A). And we presume that, if the legislature had intended to create such an exception, it would have done so expressly. *See Gorney v. Meaney*, 214 Ariz. 226, ¶ 9, 150 P.3d 799, 803 (App. 2007) (rejecting argument that legislature intended to except informed-consent claims from § 12-2603 because it had not expressly created exception); *see also* N.Y. C.P.L.R. 3012-a(c) (McKinney 1991) (creating specific exception for claims "rely[ing] solely on the doctrine of 'res ipsa loquitur'" in statute requiring attorney's affidavit of consultation with physician in medical malpractice cases); *Manic v. Dawes*, 213 Ariz. 252, ¶ 17, 141 P.3d 732, 735 (App. 2006) ("[L]egislative intent sufficient to overcome unambiguous statutory language must be more than implied; it must be clearly expressed."). Nor have the Sanchezes directed us to any legislative history otherwise suggesting the legislature did not intend §§ 12-2603 or 12-2604 to apply in such cases.

**¶10** The Sanchezes emphasize that, by its nature, the res ipsa doctrine does not require them to identify precisely what actions, falling below the standard of care, have been taken by each of the many health care professionals involved in Lorenzo's operation.

---

[4]In a cursory argument raised for the first time in their reply brief (to which we allowed Old Pueblo to file a supplemental brief in response), the Sanchezes argue §§ 12-2603 and 12-2604 "ha[ve] no application to this case" because they took effect after Lorenzo's surgery. We disagree. Although the statutes are not expressly retroactive, they are clearly procedural and do not affect a vested right of the Sanchezes. Thus, they may be applied retroactively. *See Aranda v. Indus. Comm'n*, 198 Ariz. 467, ¶ 11, 11 P.3d 1006, 1009 (2000).

Accordingly, they suggest that the requirement of §§ 12-2604(A)(1) and 12-2603(B)—that they provide an affidavit from an expert witness qualified in the same specialty "as the party against whom . . . the testimony is offered"—is unduly burdensome and extinguishes the benefit of proceeding on a theory of res ipsa. And, they complain that applying § 12-2604 to res ipsa cases would require litigants to identify an expert witness for every health care practitioner conceivably involved in an operation.

¶11    But, no feature of the res ipsa doctrine gives a plaintiff license to sue, indiscriminately, each and every health care practitioner involved in a medical procedure; nor does the doctrine require a plaintiff to sue every such practitioner. Rather, "[t]he exotic-sounding doctrine of res ipsa loquitur is nothing more than a rule of circumstantial evidence." *Schneider v. City of Phoenix*, 9 Ariz. App. 356, 359, 452 P.2d 521, 524 (1969). The rule allows a trier of fact to draw an inference of negligence when (1) the injury is "of a kind that ordinarily does not occur in the absence of negligence," (2) the injury is "caused by an agency or instrumentality subject to the control of the defendant," and (3) the claimant is not "in a position to show the particular circumstances that caused the offending agency or instrumentality to operate to her injury." *Lowrey v. Montgomery Kone, Inc.*, 202 Ariz. 190, ¶ 7, 42 P.3d 621, 623 (App. 2002). Thus, the doctrine of res ipsa loquitur does not relieve claimants of the obvious necessity of identifying which defendant or defendants controlled "the agency or instrumentality" causing their injuries. *Id.* Here, the record suggests the Sanchezes had little difficulty securing experts who could identify which two practitioners,

7

of those involved in Lorenzo's operation, had controlled the instrumentalities potentially causing his injury.[5]

¶12        Moreover, Arizona law has never applied the res ipsa loquitur doctrine to relieve a claimant of the necessity of securing expert testimony when such testimony would be required to establish the prerequisites for applying the doctrine. Res ipsa loquitur is applicable "'only when it is a matter of common knowledge among laymen or medical [experts], or both, that the injury would not ordinarily have occurred if due care had been exercised.'" *Ward v. Mount Calvary Lutheran Church*, 178 Ariz. 350, 355, 873 P.2d 688, 693 (App. 1994), *quoting Falcher v. Saint Luke's Hosp. Med. Ctr.*, 19 Ariz. App. 247, 250, 506 P.2d 287, 290 (1973). Expert testimony that the injury would not occur in the absence of negligence "may be essential to the plaintiff's case where, as . . . in some actions for medical malpractice, there is no fund of common knowledge which may permit laymen reasonably to draw the conclusion." Restatement (Second) of Torts § 328D cmt. d (1965).

¶13        In accordance with the Restatement view, Arizona courts have repeatedly held, in medical malpractice cases where the plaintiff is invoking the res ipsa doctrine, that expert testimony is necessary to establish a departure from the relevant standard of care except when negligence is so clearly apparent that a layman would recognize it. *See, e.g., Riedisser v.*

---

[5]Notably, of all the health care professionals presumably in the operating room at the time of Lorenzo's surgery, the Sanchezes have contended only two physicians were potentially negligent and have stated, through an expert witness, that each may have fallen below the standard of care. On appeal, the Sanchezes concede they have obtained "an anesthesiology expert" who has submitted an affidavit "essentially identical" to the orthopedic surgeon's affidavit.

8

*Nelson*, 111 Ariz. 542, 544, 534 P.2d 1052, 1054 (1975); *McWain v. Tucson Gen. Hosp.*, 137 Ariz. 356, 360, 670 P.2d 1180, 1184 (App. 1983); *Faris v. Doctors Hosp., Inc.*, 18 Ariz. App. 264, 269, 501 P.2d 440, 445 (1972); *see also Boyce v. Brown*, 51 Ariz. 416, 420-21, 77 P.2d 455, 457 (1938) (in general medical malpractice case, departure from standard of care "must be established by expert medical testimony, unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it"); *Carranza v. Tucson Med. Ctr.*, 135 Ariz. 490, 491-92, 662 P.2d 455, 456-57 (App. 1983) (holding no expert testimony needed to recover on res ipsa theory for burn on child's leg after heart surgery).

¶14        Thus, long before either § 12-2603 or § 12-2604 became law, claimants seeking recovery on a res ipsa loquitur theory in medical malpractice cases could be required to marshal expert testimony to support their cause of action. And, neither statute expressly requires expert testimony in those res ipsa cases where none was previously required. *See* § 12-2603(A), (D), (E) (expert witness required only when counsel for claimant believes, or court determines, expert testimony necessary to present case against chosen defendants). The statutes merely impose standards for the qualifications of experts and the specificity of their testimony in those cases where such testimony is necessary.

¶15        Notably, the trial court has dismissed the case before us not because the Sanchezes erroneously maintained that no expert testimony would be necessary to support their case, but rather because the specific expert provided, an orthopedic surgeon, does not have the qualifications required under § 12-2604 to testify about the appropriate standard of care applicable to the defendant, an anesthesiologist. And, we cannot fathom how the court's

9

enforcement of this requirement in any way impedes use of the res ipsa doctrine when, as here, the need for expert testimony is undisputed.[6]

¶16 Nor have the Sanchezes explained why our state's policy, expressed in § 12-2604, should be relaxed in the context of res ipsa cases. Because § 12-2604 merely sets forth the necessary qualifications for experts testifying to the standard of care in medical malpractice cases and because nothing about that requirement alters a claimant's evidentiary burden, we cannot agree with the Sanchezes that application of § 12-2604 would so interfere with the res ipsa doctrine that the legislature could not have intended the statute to apply in such cases.[7]

¶17 The Sanchezes challenge the propriety of applying § 12-2604 to their case for another reason. They observe that, because an orthopedic surgeon is generally in charge of the type of operation underlying their claim, that surgeon is well-qualified to opine that "this kind of injury does not ordinarily occur in the absence of someone's negligence—either . . . the surgeon or the anesthesiologist." But, in the plain, unambiguous language of § 12-

---

[6]During oral argument, the Sanchezes conceded that, under most circumstances, a claimant would eventually need to present expert testimony to demonstrate a particular health professional's liability even when proceeding on a res ipsa theory.

[7]The Sanchezes also argue that the specificity requirements set forth in § 12-2603(B) more dramatically interfere with the doctrine of res ipsa loquitur—a result they maintain the legislature could not have intended. During oral argument, the parties stated that the Sanchezes' parallel case against the orthopedic surgeon had been dismissed because of their inability to comply with that specificity requirement. But, because the trial court did not dismiss their complaint against these defendants on that basis, we do not address that issue here. Nor do we address in this appeal whether the Sanchezes have sufficiently raised a res ipsa loquitur claim.

10

2604(A), our legislature has determined that an expert in one field may not under any circumstances testify as an expert on the standard of care for a specialist in another field. *See id.; Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, ¶ 24, 88 P.3d 565, 570 (App. 2004) (if statute's "language is unambiguous, we give effect to the language and do not use other rules of statutory construction in its interpretation"). Even if the orthopedic surgeon chosen by the Sanchezes might have the necessary qualifications and experience to knowledgeably address the standard of care for anesthesiologists in the context of the specific operation performed here, we are not at liberty to overlook the requirements of a statute merely because we think those requirements might be unnecessary or cumbersome when applied to a particular case or class of cases.

¶18        The Sanchezes also argue the court erred when it dismissed their complaint for failure to comply with § 12-2604 because they were in compliance with Rule 26(b)(4)(D), Ariz. R. Civ. P., which presumptively allows only one expert per side on an issue in a medical malpractice case. But the intent of Rule 26(b)(4)(D) is simply to limit the presentation of cumulative evidence, and its limits allow one expert for each medical issue; it imposes no limitation on the number of experts per case. The rule also allows liberal expansion of its presumptive limitation when "an issue cuts across several professional disciplines." *Id.* cmt. (Committee cmt. to 1991 amendment). We are therefore unpersuaded that Rule 26(b)(4)(D) justifies the Sanchezes' failure to disclose an anesthesiology expert under the circumstances here.

¶19 The Sanchezes finally argue the trial court erred by denying their request for leave to remedy their failure to provide an affidavit from an anesthesiologist "in the event the court disagreed with [their] interpretation of the statute." Old Pueblo counters that the Sanchezes' request was improperly presented to the trial court as "a mere sentence appended to the tail end of their response to the defendants' motion to dismiss." It therefore claims the argument is waived.

¶20 However, we can find no support in either § 12-2603 or § 12-2604 for dismissing a case with prejudice merely because one party has provided a deficient preliminary expert opinion affidavit. To the contrary, § 12-2603 erects an orderly procedure by which the respective parties can litigate what expert witness testimony will be necessary and what experts must therefore be disclosed—and it does not contemplate dismissal with prejudice as a sanction for a deficient preliminary affidavit.

¶21 First, § 12-2603(A) and (B) require a claimant to certify whether expert testimony is necessary and, if so, to serve a preliminary expert opinion affidavit on opposing counsel. Then, if opposing counsel believes that the claimant has overlooked the need for certain expert testimony, opposing counsel may apply for an order directing the claimant to serve an expert opinion affidavit and must articulate the specific claim for which it believes an expert witness would be required. § 12-2603(D). If the trial court agrees and finds the affidavit of an appropriate expert witness is necessary, the court must first set a date for compliance with the statute. § 12-2603(E). Then, the court "shall dismiss the claim against the health care professional . . . *without prejudice* if the claimant . . . fails to file and serve

12

a preliminary expert opinion affidavit." § 12-2603(F) (emphasis added). Apparently distinguishing the filing of an affidavit from its sufficiency, subsection (F) also requires that the court "allow any party a reasonable time to cure any [insufficient] affidavit." *Id.*

**¶22** Here, whether we characterize Old Pueblo's motion to dismiss as an application for further expert disclosure under § 12-2603(D) or as an allegation of insufficiency of the affidavit under § 12-2603(F),[8] the trial court has imposed a sanction for the failure to comply with § 12-2603, and its companion § 12-2604, that is not contemplated by either statute.[9] Because the Sanchezes were entitled to assume the trial court would choose a remedy authorized by the relevant statutes, we find their one-sentence request that the trial court allow them an opportunity to provide an additional affidavit sufficient to preserve this claim on appeal.

**¶23** During oral argument, Old Pueblo correctly observed that it moved for dismissal not under § 12-2603, but rather under § 12-2604, because the Sanchezes' disclosed

---

[8]Old Pueblo could arguably have sought a dismissal without prejudice if the Sanchezes had "certified that an affidavit [was] necessary" and then failed to file it. A.R.S. § 12-2603(F). But here the Sanchezes did file an affidavit. Old Pueblo merely contends that the orthopedic surgeon was not qualified to render an opinion about the standard of care for Dr. Hughes, an anesthesiologist.

[9]In *Gorney v. Meaney*, 214 Ariz. 226, ¶ 16, 150 P.3d 799, 804-05 (App. 2007), we affirmed the trial court's grant of summary judgment where the plaintiff had provided an expert opinion affidavit failing to meet the requirements of § 12-2603(B)—an outcome arguably at odds with our reasoning in this case. But in *Gorney*, the appellant never contended that summary judgment was an inappropriate remedy for a violation of § 12-2603(B). We therefore never addressed that question. Moreover, the plaintiff there had been provided an opportunity to cure his affidavit and had failed to do so before his case was dismissed. *Gorney*, 214 Ariz. 226, ¶ 3, 150 P.3d at 801.

expert was not qualified to provide testimony against Old Pueblo, as required by § 12-2604. For that reason, Old Pueblo suggests that the procedural framework set forth in § 12-2603 does not apply to its motion, and the trial court was not limited by the remedies set forth therein. But § 12-2604 contains no procedural framework of its own for litigating the required qualifications of an expert, and § 12-2603 provides clear procedural steps for parties who, like Old Pueblo, seek to raise a challenge to the qualifications of the expert offering an opinion in the preliminary affidavit. *See* § 12-2603(B)(1), (D) (requiring preliminary expert affidavit to state "[t]he expert's qualifications to express an opinion on the health care professional's standard of care or liability for the claim" and permitting opposing counsel who believes additional expert testimony is needed to apply for relief); *see also* § 12-2603(F) (implying opposing counsel may allege "insufficiency" of expert affidavit as part of application for relief). And, the carefully articulated procedure set forth in § 12-2603 would have little practical application if litigants could simply bypass its requirements and specified remedies by merely omitting reference to § 12-2603 when challenging the contents of a preliminary expert opinion affidavit. At least in the context of challenges to preliminary witness affidavits, we do not believe the legislature intended § 12-2603 to be a mere recommendation for how our trial courts might procedurally address such disputes.

¶24 Finally, Old Pueblo maintains the trial court could dismiss the case against it with prejudice because, once the court determined the Sanchezes' expert lacked the qualifications to testify, any disclosure of a new expert witness would violate the witness-disclosure deadline set by the court, a separate concern not squarely addressed by § 12-2603.

14

Our record suggests, however, that the Sanchezes had provided their flawed preliminary expert affidavit in November 2006, five months before the witness-disclosure deadline. Nonetheless, Old Pueblo did not challenge the sufficiency of that affidavit until one month after the deadline had passed—insuring that the Sanchezes could not remedy the problem within the disclosure deadline.

¶25 Although the trial court has not articulated why it chose the sanction of dismissal with prejudice, we can identify no appropriate ground for doing so on the record before us.[10] To the extent the trial court did so to punish the Sanchezes for submitting a flawed affidavit in the first instance, dismissal with prejudice was not authorized under § 12-2603, as discussed above. If the court sought to sanction the Sanchezes for the delay caused by litigation over the sufficiency of the affidavit, the record suggests Old Pueblo was primarily responsible for that delay. Indeed, the Sanchezes' inability to remedy the flawed affidavit within the witness-disclosure deadline was caused not by the Sanchezes' dilatory conduct but rather by Old Pueblo's arguably strategic behavior in filing its challenge after that deadline had passed. In short, were we to conclude the trial court intended to sanction the Sanchezes for violating the witness-disclosure deadline, we would find the sanction it chose unsupported by the factual record before us. *See Austin v. City of Scottsdale*, 140 Ariz.

---

[10]Under different circumstances, a court might well find ample justification for imposing the sanction of dismissal with prejudice for a plaintiff's failure to abide by witness disclosure deadlines—even when that failure arises from the plaintiff's lack of compliance with § 12-2604. We merely hold that, under the particular circumstances here, where the Sanchezes' inability to remedy the violation of § 12-2604 within the deadline arose from Old Pueblo's approximate six-month delay in raising a challenge on that basis, such a drastic sanction is not supported by the record before us.

579, 581, 684 P.2d 151, 153 (1984) (sanction of dismissal "'harsh and not to be invoked except under extreme circumstances'"), *quoting Buchanan v. Jimenez*, 18 Ariz. App. 298, 299, 501 P.2d 567, 568 (1972).

¶26 For the foregoing reasons, we affirm the trial court's conclusion that the Sanchezes were required to provide an affidavit in compliance with § 12-2604 as a prerequisite to presenting testimony regarding the appropriate standard of care for an anesthesiologist under the circumstances of the case. However, we reverse its order dismissing the complaint with prejudice and remand the case to the trial court to address the Sanchezes' failure to provide that affidavit in a manner consistent with § 12-2603.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
PHILIP E. ESPINOSA, Judge


_____
GARYE L. VÁSQUEZ, Judge

16