IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of the Conservatorship for:

CATHIE HARDT, An Adult.

LORRIE NEVENS, Special Conservator for Cathie Hardt, on behalf of
Cathie Hardt; LORRIE NEVENS; and JEFFREY NEVENS,
*Plaintiffs/Appellants*,

*v.*

AZHH, LLC, an Arizona limited liability company formerly known as
Arizona Heart Hospital, LLC, *Defendant/Appellee*.

No. 1 CA-CV 15-0532
FILED 5-30-2017

Appeal from the Superior Court in Maricopa County
No. PB 2009-002468
The Honorable Edward W. Bassett, Judge

**REVERSED AND REMANDED**

COUNSEL

Solomon & Relihan, PC, Phoenix
By Martin J. Solomon, Kevin J. McAlonan
*Co-Counsel for Plaintiffs/Appellants*

The Breslo Law Firm, LLC, Scottsdale
By John C. Breslo
*Co-Counsel for Plaintiffs/Appellants*

Lewis Brisbois Bisgaard & Smith, LLP, Phoenix
By James K. Kloss
*Counsel for Defendant/Appellee*

Lewis Brisbois Bisgaard & Smith, LLP, Atlanta, GA
By Joelle C. Sharman
*Pro Hac Vice Counsel for Defendant/Appellee*

---

## OPINION

Judge Margaret H. Downie delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge John C. Gemmill[1] joined.

---

**D O W N I E**, Judge:

**¶1**      Cathie Hardt and Lorrie Nevens (collectively, "Appellants") appeal a final judgment entered after a jury trial that resulted in a defense verdict.[2]  Because we conclude the superior court improperly precluded Appellants' rebuttal causation expert as "duplicative," and Appellants have demonstrated resulting prejudice, we reverse and remand for a new trial.

### FACTS AND PROCEDURAL HISTORY

**¶2**      Hardt was admitted to the Arizona Heart Hospital ("AZHH") in the early morning hours of August 25, 2008 with "complete occlusion of the distal aorta at its bifurcation, which presented as pulseless lower extremities."  She was deemed a "high-risk" patient at risk of death without removal of the blockage.  Hardt underwent surgery at AZHH that same morning.

**¶3**      On August 27, AZHH staff documented the presence of Stage I and II ulcers on Hardt's back and sacral/coccyx area.  By

---

[1]    The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]    Although Jeffrey Nevens was originally named as a plaintiff, he was dismissed as a party and is not involved in this appeal.

September 9, 2008, the ulcers had progressed to Stage III, and upon discharge from AZHH on September 18, 2008 to Heartstone Hospital-Mesa, LLC, dba Trillium Specialty Hospital-East Valley ("Trillium"), Hardt had a Stage IV ulcer.

¶4            Appellants sued AZHH and Trillium, alleging Hardt was a vulnerable adult who developed "avoidable pressure ulcers due to substandard nursing care, negligence, abuse, and neglect." The court ordered the claims against Trillium arbitrated, but the lawsuit against AZHH proceeded.

¶5            After a nine-day trial, the jury returned a verdict in favor of AZHH. Appellants unsuccessfully moved for a new trial pursuant to Arizona Rule of Civil Procedure ("Rule") 59. After the superior court issued its final judgment, Appellants timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(5)(a).

## DISCUSSION

### I.     Preclusion of Appellants' Rebuttal Expert

¶6            Joseph Silva, M.D. testified as a causation expert during Appellants' case-in-chief. Dr. Silva, who is Board-certified in internal medicine and has a specialty in infectious disease, opined that Hardt developed pressure ulcers during her stay at AZHH that were preventable through repositioning, wound care, and adequate nutrition. Dr. Silva did not offer opinions regarding vascular issues, testifying he would defer to a vascular surgeon on that topic.

¶7            During its case-in-chief, AZHH called Gerald Treiman, M.D. — a Board-certified general and vascular surgeon — to testify as its causation expert. Dr. Treiman opined that Hardt's ulcers were caused by a lack of blood flow that pre-dated her admission to AZHH.

¶8            Appellants planned to call vascular surgeon Paul Collier, M.D. as a rebuttal witness to refute Dr. Treiman's opinions. After the defense rested, however, AZHH orally moved to preclude Dr. Collier, arguing he would be "a repetitive causation expert" in violation of Rule 26. The superior court agreed, labeling Dr. Collier "a duplicative expert" and precluding his testimony.

¶9            A ruling admitting or excluding evidence will not be overturned on appeal absent abuse of discretion and resulting prejudice.

*Schwartz v. Farmers Ins. Co. of Ariz.*, 166 Ariz. 33, 37 (App. 1990). If an evidentiary ruling is predicated on a question of law, however, we review that ruling *de novo. Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 399, ¶ 10 (App. 2000). And even when a ruling is discretionary, "[a] court abuses its discretion if it commits an error of law in reaching a discretionary conclusion." *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007).

**¶10** Rule 26(b)(4)(D) states that "[u]nless the parties agree or the court orders otherwise for good cause, each side is presumptively entitled to call only one retained or specially employed expert to testify on an issue." The rule, however, contemplates "liberal expansion of its presumptive limitation when 'an issue cuts across several professional disciplines.'" *Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 322 ¶ 18 (App. 2008) (quoting Ariz. R. Civ. P. 26(b)(4) cmt. to 1991 amend.).

**¶11** To the extent Dr. Collier's rebuttal testimony would have focused on vascular issues, it would not have been duplicative of or cumulative to Dr. Silva's because Dr. Silva had not addressed such matters. "[T]he intent of Rule 26(b)(4)(D) is simply to limit the presentation of cumulative evidence," *id.*, meaning evidence that "merely augments or tends to establish a point already proved by other evidence," *State v. Kennedy*, 122 Ariz. 22, 26 (App. 1979).

**¶12** AZHH's closing argument made it abundantly clear that Dr. Silva's opinions and expertise were qualitatively different from (and, in AZHH's view, inferior to) a vascular surgeon's. Counsel argued:

> [Dr. Silva is] a nice guy, but he ain't the right type of doctor for this case, he's not a vascular surgeon; he's not even a surgeon -- not a vascular surgeon. He doesn't have the right expertise.
>
> . . .
>
> Dr. Treiman was the only vascular surgeon you heard from as an expert witness. You didn't hear any other vascular surgeon. You didn't hear anybody with the right expertise.
>
> . . .
>
> So we put on the person with the right expertise. We put on the person who was best qualified, best able to talk about what happened, why it was in this case. And what did that

one and only vascular surgeon when you talk about causation, what caused this. What did that one and only expert tell you?

¶13        Contrary to AZHH's suggestion on appeal, there is nothing untoward about Appellants making a "strategic" decision to wait to call Dr. Collier in rebuttal, as opposed to during their case-in-chief. *See City Transfer Co. v. Johnson*, 72 Ariz. 293, 297 (1951) ("[T]he law is well settled that the mere fact that testimony might have been introduced as a part of the case in chief will not preclude its being made a part of the rebuttal."). "Rebuttal evidence is to counter a new fact or allegation made by an opponent's case." *Jansen v. Lichwa*, 13 Ariz. App. 168, 171 (1970). Appellants' theory of causation was, as Dr. Silva testified, that negligence by medical professionals at AZHH caused Hardt's ulcers. Unless and until AZHH placed evidence before the jury that Hardt's ulcers were caused by pre-existing vascular issues, Appellants had no reason to present testimony by a vascular expert. Appellants presented a *prima facie* case of causation during their case-in-chief through Dr. Silva based on *their* theory of the case — not AZHH's defense. They were not required to do otherwise.

¶14        In opposing the motion for new trial, AZHH argued that Appellants "sought to duplicate Dr. Silva by also calling Dr. Collier to testify on causation issues." The record does not support this characterization. Although some of Dr. Collier's disclosed opinions might have duplicated Dr. Silva's, and thus been properly excluded as cumulative if Appellants had sought to offer them at trial,[3] it is clear from Appellants' pretrial disclosures that, unlike Dr. Silva, Dr. Collier would discuss and refute Dr. Treiman's opinion that vascular conditions caused Hardt's ulcers.

¶15        AZHH also faults Appellants for not making a more detailed proffer to the court about Dr. Collier's intended rebuttal testimony. But it was not until the close of day six of trial that AZHH orally moved to preclude Dr. Collier. Until that time, the record suggests Appellants had every reason to believe Dr. Collier would be permitted to testify in rebuttal. They had properly disclosed and listed both Dr. Silva and Dr. Collier as witnesses in the joint pretrial statement. Although AZHH

---

[3]        For example, one of Dr. Collier's disclosed opinions was that "[t]he lack of pressure relief was clearly the cause of the pressure ulcer" — an opinion that would have been cumulative.

objected to other witnesses Appellants listed, it did not object to Dr. Collier. AZHH filed pretrial motions to preclude other expert witnesses, including one motion asserting that Appellants were offering another expert in violation of Rule 26(b)(4)(D) because she would duplicate other standard-of-care expert testimony. Yet there was no indication until more than halfway through trial that AZHH would seek to preclude Dr. Collier. Moreover, the superior court had the necessary information before it, having heard Dr. Silva specifically testify he was not opining about vascular issues.

¶16        Rule 16(g)(2)(D) requires a joint pretrial statement to contain

> a list of witnesses each party intends to call to testify at trial, identifying those witnesses whose testimony will be presented solely by deposition. *Each party must list any objection to a witness and the basis for that objection.*

(Emphasis added.) "The pretrial statement serves to narrow the scope of the legal and factual issues to those which are truly legitimate, prevents surprises and facilitates the trial of the case. The pretrial statement controls the subsequent course of the litigation." *Aetna Cas. & Sur. Co. v. Dini*, 169 Ariz. 555, 557 (App. 1991) (addressing predecessor rule to Rule 16(g)). Issues that are not identified in the pretrial statement may be deemed waived. *Carlton v. Emhardt*, 138 Ariz. 353, 355 (App. 1983). Rule 26(b)(4)(D) is not intended as a vehicle to permit last-minute objections during trial, especially when the party urging preclusion has not previously objected as required by Rule 16(g)(2)(D). *Cf. Perguson v. Tamis*, 188 Ariz. 425, 429 (App. 1996) (addressing prior rule prescribing one expert per issue and holding that the rule should not be used as "a weapon of destruction" in an "arsenal of technicalities").

¶17        Appellants have also demonstrated that they were prejudiced by the preclusion of Dr. Collier's testimony. AZHH's closing argument alone demonstrates the prejudice. Based on the erroneous exclusion of Dr. Collier's testimony, we vacate the judgment in favor of AZHH and remand for a new trial.

## II.    Consortium Claim

¶18        The superior court entered judgment as a matter of law against Nevens (Hardt's daughter) on her loss of consortium claim, finding the evidence insufficient to submit that claim to the jury. Because we are remanding this matter for a new trial, we need not address Nevens' consortium claim in depth. We note, however, that a child

asserting loss of consortium as to a parent need not present evidence of catastrophic injuries. *See, e.g.*, *Miller v. Westcor Ltd. P'ship*, 171 Ariz. 387, 395 (App. 1991) ("The focus of the trial court's inquiry is on the interference with the normal relationship between parent and child."). It is unclear what standard the superior court applied to Nevens' loss of consortium claim, which may be re-litigated on remand.

## III.    Testimony by Former AZHH Employee

¶19        Because the issue may arise on remand, we address Appellants' challenge to the preclusion of certain testimony by Pamela Molyneaux — a former AZHH employee who worked as a clinical document specialist.

¶20        AZHH moved in limine to preclude Molyneaux from testifying "about liability or billing" in the context of hospital chart entries reflecting the presence of skin ulcers. Appellants opposed the motion, arguing Molyneaux had testified at deposition that entries were added to Hardt's chart to reflect the presence of pressure ulcers when she was admitted to the hospital and that documenting ulcers is a "liability issue." AZHH responded that it was not contending Hardt had ulcers when admitted to its facility. The superior court ruled:

> [T]he plaintiff will be allowed to examine Molyneaux as to . . . her work as a clinical document specialist in chart review and in placing in the charts the documents that, according to the plaintiffs' theory, may have induced two doctors to make a chart entry that was incorrect. So be allowed to establish that, and be allowed to establish the -- that that was done . . . for the purposes of -- of making sure the hospital received maximum reimbursement from insurance providers.
>
> I do not find, based upon what has been presented to me, that there's adequate foundation for Molyneaux to testify that the reason for the query was . . . for purposes of limiting the hospital's liability. From everything that was presented to me, that seemed to be extraordinarily equivocal and not based on adequate foundation, . . . would be an improper opinion by someone who is not being offered or qualified as an expert.

¶21        "In determining relevancy and admissibility of evidence, the trial judge has considerable discretion. . . . Evidence is relevant if it has any basis in reason to prove a material fact in issue." *State v. Smith*,

136 Ariz. 273, 276 (1983); *see* Ariz. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Had AZHH taken the position that Hardt had pressure ulcers upon admission, more expansive testimony by Molyneaux might have been relevant to challenge the veracity of that assertion. But the superior court could reasonably conclude that whether AZHH had incentive to evade liability or recover enhanced reimbursement from an insurer or third-party payor by falsely documenting the existence of ulcers upon admission was irrelevant to the questions before the jury — i.e., whether AZHH committed medical negligence or abused a vulnerable adult. Additionally, the record supports the court's finding that Molyneaux's testimony about liability was "extraordinarily equivocal" and lacking in foundation.

¶22 To the extent Appellants also challenge the preclusion of a July 31, 2008 letter from the Center for Medicaid and State Operations, the record reveals no abuse of discretion based on information before the court at the time of its ruling. The letter at issue addresses Medicare billing and reimbursement policies effective October 1, 2008 for "selected hospital-acquired conditions," including pressure ulcers. The policy was not in effect during Hardt's stay at AZHH, Hardt was not a Medicare patient, AZHH's billing practices were not at issue, and the superior court concluded the document had "the potential for . . . generating confusion."

## IV. Remaining Issues

¶23 Appellants identify two additional issues that we do not reach: (1) the submission of Trillium's fault to the jury; and (2) the court's handling of a jury question received during deliberations. The second issue is not likely to recur on remand. And the first issue, as framed, relates to the court's decision during trial to reverse an earlier ruling precluding a non-party at fault defense. Given the defense verdict, the jury had no occasion to consider comparative fault, and Appellants thus suffered no prejudice. We express no opinion about whether AZHH may present a non-party at fault defense at the new trial.

## CONCLUSION

¶24     For the foregoing reasons, we reverse the judgment of the superior court and remand for a new trial.  We award Appellants their taxable costs on appeal contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:   AA