NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WILLIAM ARNOLD, et al., *Plaintiffs/Appellants*,

*v.*

VIEWPOINT HEALTHCARE, INC, et al., *Defendants/Appellees*.

No. 1 CA-CV 23-0271
FILED 01-23-2024

Appeal from the Superior Court in Maricopa County
Nos. CV2019-050255
CV2022-053714
(Consolidated)
The Honorable Melissa Iyer Julian, Judge
The Honorable Sara Agne, Judge

**AFFIRMED**

COUNSEL

Reynolds Legal Group PLLC, Flagstaff
By Michael T. Reynolds
*Counsel for Plaintiffs/Appellants*

Ensign Services Inc., Higley
By Michael J. Ryan, Nichole Cullen
*Co-Counsel for Defendants/Appellees*

Jones Skelton & Hochuli PLC, Phoenix
By Jonathan Paul Barnes, Jr.
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Anni Hill Foster joined.

---

**C A M P B E L L**, Judge:

¶1 William Arnold and Bobbi Laniece Patterson (Parents) appeal the superior court's judgment denying relief under Arizona's savings statute, A.R.S. § 12-504. They also appeal the dismissal of their second amended complaint against Viewpoint Healthcare, Inc., doing business as Horizon Post Acute (Horizon), for noncompliance with A.R.S. § 12-2603. For the following reasons, we affirm.

**BACKGROUND**

¶2 Parents' son, Antonio Michael Patterson Arnold, had a septic infection when he was admitted to a local hospital for treatment in February 2017. The infection spread to Antonio's heart, causing tricuspid and mitral valve endocarditis. Antonio underwent a tricuspid valve replacement to mitigate the endocarditis but suffered a "complete heart block that complicated his post-operative course of healing." To address his escalating heart issues, doctors installed a pacemaker. His health care providers ordered him to take an antibiotic to treat the endocarditis until May 23.

¶3 After Antonio's discharge from the hospital on April 25, Horizon admitted him for post-acute rehabilitation. Antonio's admitting diagnosis report noted past opioid and stimulant abuse. On May 7, Horizon's nursing staff found Antonio's deceased body on the floor after an "unattended death" that occurred during intravenous antibiotic administration. Antonio's immediate cause of death on his death certificate is listed as "endocarditis/valvular heart failure" due to "intravenous drug abuse."

¶4 In 2019, Parents sued Horizon and others for Antonio's wrongful death, negligence, and medical malpractice. Parents claimed (1) the pacemaker was defective and did not include a back-up battery, (2) the hospital prematurely discharged Antonio while he was unstable, and (3) Horizon was understaffed and failed to appropriately monitor Antonio. Because the litigation was filed against a licensed professional, Parents

were required to certify whether expert testimony would be required "to prove the licensed professional's standard of care or liability for the claim" A.R.S. § 12-2602(A). Parents indicated in their complaint that such testimony would be required to prove their case.

**¶5**　　　　To comply with their initial expert disclosure obligations, Parents proffered a preliminary expert opinion affidavit authored by a registered nursing expert, Ethel Wills. *See* A.R.S. §§ 12-2602(B), -2603. Wills' curriculum vitae showed she had more than 30 years of experience in nursing care. Among other things, Wills had provided care to patients with cardiac conditions and had assessed and provided emergent care to patients in cardiac distress.

**¶6**　　　　In her preliminary expert opinion affidavit, Wills noted that Horizon neglected to timely administer Antonio's prescribed antibiotic. Wills specifically opined that:

> The nursing staff breached the standard of care of medication administration by failing to give his medication at the right time. During the 11 days that Antonio was at Horizon, [the antibiotic] was administered more than an hour late 14 times. Some administrations were two to three hours later than the scheduled administration times. This inconsistency in his receiving the antibiotic more likely than not affected maintaining a therapeutic level of the antibiotic to treat the endocarditis.

Wills also opined that shortly before Antonio's death, Horizon's nurse failed to adequately monitor him during intravenous administration of the antibiotic. Antonio's treatment chart noted that administration of the antibiotic began at 11:46 p.m. on May 6, 2017, and indicated that the nurse returned at 1:10 a.m. on May 7, "finding him without a pulse and not breathing." Wills concluded:

> In failing to return to monitor during the continuous infusion of antibiotic during the hour, there was no consideration made of the possibility of an adverse event relevant to the medication administration. The failure to intervene caused Antonio's death.

Finally, Wills stated that Horizon's nursing staff did not follow the care plan established for the antibiotic therapy and failed to develop a care plan relevant to the "medical diagnosis of endocarditis/valve replacement, and pacemaker implantation." She concluded that "[t]his negligent breach of

the standard of medical care and the failure to consistently monitor the patient, caused Antonio to pass away."

¶7 In June 2022, the superior court dismissed Parents' second amended complaint against Horizon without prejudice.[1] The court noted that although Wills was qualified to testify about alleged deviations in the standard of care, she was not qualified to opine that any nursing interventions would have changed Antonio's death due to endocarditis/valvular heart failure. Ultimately, the court concluded that Parents failed to comply with A.R.S. § 12-2603(B)(4), requiring an identified expert to establish causation, and Arizona Rule of Evidence ("Rule") 702, regarding expert qualifications.

¶8 Parents sought entry of final judgment or alternative relief under the savings statute, A.R.S. § 12-504, and refiled their lawsuit against Horizon. The superior court consolidated the actions but declined to allow the refiling of the lawsuit under the savings statute. The court relied on *Passmore v. McCarver*, 242 Ariz. 288 (App. 2017), finding that Parents failed to prosecute their case. The court dismissed the newly filed complaint and entered a judgment of dismissal with prejudice, from which Parents appeal.

## DISCUSSION

### I. Causation Testimony

¶9 Parents argue the superior court erred by holding their disclosed expert lacked the specialized knowledge to assist a jury in determining causation under Rule 702[2] and A.R.S. § 12-2603. The superior court referred to Rule 702 as the standard governing expert qualifications.

---

[1] Parents settled with or dismissed the remaining defendants.

[2] Regardless of the rule or statute cited, A.R.S. § 12-2603 defines an expert in the same way as Rule 702, which governs expert witness testimony. *Rasor v. Nw. Hosp. LLC*, 244 Ariz. 423, 426, ¶ 12 (App. 2018); *compare* A.R.S. § 12-2603(H)(2) *with* Ariz. R. Evid. 702. Under Rule 702, "[f]or a witness to be qualified as an expert, he or she need only possess 'skill and knowledge superior to that of [people] in general.'" *State v. Romero*, 239 Ariz. 6, 10, ¶ 17 (2016) (citations omitted). Notwithstanding knowledge superior to that of the general population, ultimately a causation expert's knowledge must be such that the expert's testimony "will assist the jury in its resolution" of causation. *Rasor*, 244 Ariz. at 429, ¶ 23 (citation omitted); *see also Windhurst v. Ariz. Dep't of Corrs.*, ___ Ariz. ___, ___, ¶ 47, 536 P.3d 764, 775 (2023).

Given the procedural posture of this case and the lack of any expert witness testimony, in this decision we refer to A.R.S. § 12-2603(B)(1)'s requirement that the affidavit set forth an expert's qualifications to opine on liability. We "must determine whether the judgment, not the reasoning, of the superior court was correct." *Picaso v. Tucson Unified Sch. Dist.*, 217 Ariz. 178, 181, ¶ 9 (2007).

¶10        We review the superior court's ruling determining an expert's qualifications for abuse of discretion. *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 387, ¶ 30 (2013). We review de novo the dismissal for the failure to "properly certify the non-frivolous nature of the complaint pursuant to A.R.S. § 12-2603." *Boswell v. Fintelmann*, 242 Ariz. 52, 54, ¶ 5 (App. 2017).

¶11        In adopting A.R.S. § 12-2603, requiring a preliminary expert opinion affidavit, the legislature has "erect[ed] an orderly procedure by which the parties can litigate what expert witness testimony will be necessary and what experts must be disclosed." *Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 323, ¶ 20 (App. 2008). The statute "does not require that the expert giving the preliminary affidavit serve as the expert at trial." *Jilly v. Rayes*, 221 Ariz. 40, 42–43, ¶ 6 (App. 2009). The affidavit requirement is "meant to certify that the action . . . is not meritless." *Id.* at 43, ¶ 6.

¶12        The affidavit must contain the expert's qualifications to opine on the health care professional's standard of care or—as relevant here— liability. A.R.S. § 12-2603(B)(1). An expert providing a preliminary expert opinion affidavit must be "a person who is qualified by knowledge, skill, experience, training or education to express an opinion regarding a licensed health care professional's standard of care or liability for the claim." A.R.S. § 12-2603(H)(2). The affidavit must also state "[t]he manner in which the health care professional's acts, errors or omissions caused or contributed to the damages or other relief sought by the claimant." A.R.S. § 12-2603(B)(4); *see also Gorney v. Meaney*, 214 Ariz. 226, 231–32, ¶ 16 (App. 2007) (noting that the preliminary expert opinion affidavit must state that the alleged deviations in the standard of care proximately caused the harm).

¶13        Here, Wills' affidavit failed to comply with A.R.S. § 12-2603(B)(4) because it failed to explain how any failure of care led to Antonio's death. The affidavit also failed to identify Wills' qualifications that would enable her to draw such inferences, as required by A.R.S. § 12-2603(B)(1).

**¶14** Wills' first causation opinion addressed the untimely administration of Antonio's antibiotics. While Wills opined that delays in medication administration resulted in the failure to maintain a therapeutic level of the antibiotic to treat Antonio's endocarditis, she did not sufficiently state the "manner in which" this failure caused Antonio's death as required by A.R.S. § 12-2603(B)(4). Specifically, Wills failed to determine at what point the failure to timely administer the antibiotic resulted in sub-therapeutic levels of the antibiotic or if timely administration would have prevented his death. And nothing in Wills' affidavit or attached curriculum vitae, such as experience in pathophysiology or the pharmacokinetics of antibiotic therapy, showed that she was qualified under A.R.S. § 12-2603(B)(1) or -2603(H)(2) to opine on the therapeutic level of an antibiotic.

**¶15** Wills next opined that Horizon's nursing staff's failure to monitor the antibiotic infusion in the hour preceding Antonio's death caused his death. But Wills did not set forth the standard of care for appropriate monitoring of a patient for intravenous antibiotic administration,[3] explain at what point proper monitoring would have prevented the death, or explain if the death could have been prevented by compliant monitoring. *See Sampson v. Surgery Ctr. of Peoria, LLC*, 251 Ariz. 308, 313, ¶ 23 (2021) (affirming summary judgment when plaintiff's expert's testimony failed to "connect the dots" between an alleged insufficient observation and the patient's death because the jury would be left to speculate). Wills did not satisfy A.R.S. § 12-2603(B)(4) because she did not explain how failure to monitor the infusion caused Antonio's death.

**¶16** In their reply brief, Parents argue that Horizon nurses caused or contributed to Antonio's death by "failing to intervene in his cardiac event and administer potentially life-saving [cardio-pulmonary resuscitation]." But medical malpractice cases require proof of causation by the probability standard, not the possibility standard. A.R.S. § 12-563(2); *Kreisman v. Thomas*, 12 Ariz. App. 215, 218 (1970).

**¶17** Finally, Wills' third causation opinion, criticizing Horizon's treatment plans or lack thereof, was wholly conclusory and failed to link the flaws in the treatment plan to the mechanism of Antonio's death. Wills did not state what an appropriate treatment plan would have been nor establish that the failure to have one caused Antonio's death. Again, Wills

---

[3] For example, Wills did not explain whether the standard of care required continuous observation or periodic checks at specific intervals.

failed to show how Horizon's actions or inaction caused Antonio's death as required by A.R.S. § 12-2603(B)(4).

**¶18**        Parents' remaining arguments are similarly unavailing. They argue that numerous other courts have permitted Wills to testify at depositions and at trial regarding medical negligence and causation. But Wills' previous testimonial experience is irrelevant to the matter at hand. *See Englehart v. Jeep Corp.*, 122 Ariz. 256, 258 (1979) (stating that "the fact that a witness has qualified as an expert on previous occasions does not make him any more qualified to testify in the case at bar"). Parents also argue that Wills' affidavit need not have ruled out Antonio's pre-existing conditions as his sole cause of death. Although we agree, Wills' affidavit nevertheless failed to sufficiently state the mechanism of death as required by A.R.S. § 12-2603(B)(4). For the same reason, no further discovery examining Wills' qualifications was necessary for the court to reach its conclusion. *See Sanchez*, 218 Ariz. at 323–24, ¶ 23 (noting that A.R.S. § 12-2603 provides the remedy for testing the sufficiency of an expert affidavit).

**¶19**        Because Parents failed to proffer a sufficient affidavit, the superior court did not err in dismissing the action under A.R.S. § 12-2603(F).

## II.    Relief Under A.R.S. § 12-504

**¶20**        Parents argue the superior court misapplied *Passmore* by concluding they failed to prosecute their case and denying relief to refile their cause of action under the discretionary provisions of the savings statute, A.R.S. § 12-504(A).[4] We review for abuse of discretion the superior court's denial of discretionary relief under the savings statute. *Passmore*, 242 Ariz. at 291, ¶ 7; *Jepson v. New*, 164 Ariz. 265, 274 (1990).

**¶21**        When the superior court terminates an action for lack of prosecution, it should only grant relief under A.R.S. § 12-504(A) when the plaintiff demonstrates the case was dismissed "despite diligent pursuit of the case." *Jepson*, 164 Ariz. at 274. The plaintiff has the burden to present the circumstances justifying relief under the statute. *Id*. at 272.

---

[4]        Horizon argues Parents waived this issue because when Parents filed their motion for savings-statute relief, they asserted they were neutral about whether the superior court should grant savings-statute relief or enter final judgment.  But Parents only sought savings-statute relief after they moved for entry of final judgment, and a co-defendant responded that the court should deny entry of final judgment because Parents could seek relief under the savings statute. We find no waiver.

**¶22**          In *Passmore*, this court held that a dismissal for failure to serve a preliminary expert opinion affidavit is a dismissal for which the discretionary relief provision in A.R.S. § 12-504(A) applies. 242 Ariz. at 291–92, ¶ 8. Parents argue that *Passmore* is inapposite because the plaintiff in *Passmore* failed to serve *any* preliminary expert opinion affidavits, which the superior court found amounted to lack of prosecution. *See id*. at 290, 292–93, ¶¶ 2, 13. Parents note that they served *three* preliminary expert opinion affidavits; thus, they argue, they showed diligent efforts in prosecuting their case. But the record does not support Parents' argument. In June 2021, the superior court struck Parents' original and supplemental preliminary expert opinion affidavits against a co-defendant. In January 2022, the superior court concluded that Parents' more recent preliminary expert opinion affidavit by a second expert against that same co-defendant was deficient regarding causation. The sufficiency of affidavits regarding a co-defendant is irrelevant to this appeal. More significantly, the holding in *Passmore* did not turn on attempted compliance with statutory obligations; it instead focused on the delay resulting from non-compliance. *Id.* at 292, ¶ 9 (noting that "[m]ere delay can be the basis of dismissal" and the failure to satisfy A.R.S. § 12-2603 "is an unambiguous form of delay" (citation omitted)).

**¶23**          Parents contend that because the superior court failed to tell them they needed a physician to establish causation, they acted reasonably and in good faith in moving forward with a preliminary expert opinion affidavit from a nurse. But they did not necessarily need a physician expert—a nurse expert would have been acceptable. In fact, the court specifically cited *Rasor*, which held that a nurse may opine on causation if she or he has specialized knowledge to assist the jury in its resolution on the issue of causation. 244 Ariz. at 429, ¶ 23; *see also Windhurst*, ___ Ariz. at ___, ¶ 47, 536 P.3d at 775. The affidavit was deficient not because it was provided by a nurse expert, but rather because it did not assist in the resolution of the cause of Antonio's death.

**¶24**          We conclude the superior court correctly determined Wills' affidavit did not satisfy A.R.S. § 12-2603 regarding causation. This failure amounted to a lack of prosecution for which Parents fail to meet their burden to present circumstances justifying discretionary relief under A.R.S. § 12-504(A).

## CONCLUSION

**¶25** For the foregoing reasons, we affirm the superior court's ruling. We award costs to Horizon upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: TM